THOMAS F. CARLUCCI, CA Bar No. 135767
  tcarlucci@foley.com
JAIME DORENBAUM, CA Bar No. 289555
  jdorenbaum@foley.com
**FOLEY & LARDNER LLP**
555 CALIFORNIA STREET, SUITE 1700
SAN FRANCISCO, CA 94104-1520
TELEPHONE:  415.434.4484
FACSIMILE:   415.434.4507

ETHAN D. MILLAR, CA Bar No. 198097
  ethan.millar@alston.com
ELIZABETH A. SPERLING, CA Bar No. 231474
  elizabeth.sperling@alston.com
CORAL DEL MAR LOPEZ, CA Bar No. 308242
  coral.lopez@alston.com
**ALSTON & BIRD LLP**
333 SOUTH HOPE STREET, 16TH FLOOR
LOS ANGELES, CA 90071-1410
TELEPHONE:         213-576-1000
FACSIMILE: 213-576-1100

Attorneys for Defendants
CLUBCORP HOLDINGS, INC., et al.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>                                          Plaintiff,<br><br>          vs.<br><br>CLUBCORP HOLDINGS, INC., CLUBCORP CLUB OPERATIONS, INC., CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC., CLUBCORP ALISO VIEJO HOLDING CORP., BERNARDO HEIGHTS COUNTRY CLUB, CLUBCORP BRAEMAR COUNTRY CLUB, INC., CLUBCORP CREST COUNTRY CLUB, INC., CLUBCORP CENTER CLUB, INC., CLUBCORP COTO PROPERTY HOLDINGS, INC., CLUBCORP CROW CANYON MANAGEMENT CORP., CLUBCORP DESERT FALLS COUNTRY CLUB, INC., GRANITE BAY GOLF CLUB, INC., A/K/A CLUBCORP GRANITE BAY MANAGEMENT, INC., CLUBCORP IW GOLF CLUB, INC., CLUBCORP MISSION HILLS COUNTRY CLUB, INC., CLUBCORP PORTER VALLEY COUNTRY CLUB, INC., | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1441, 1446**<br><br>[Removed from San Francisco Superior Court, Case No. CGC-19-576620]<br><br>Case Filed:     6/11/2019 |

NOTICE OF REMOVAL OF ACTION
CASE NO.

SANTA ROSA GOLF & COUNTRY CLUB,
CLUBCORP SPRING VALLEY LAKE
COUNTRY CLUB, INC., CLUBCORP TEAL
BEND GOLF CLUB, INC., CLUBCORP
TURKEY CREEK GOLF CLUB, INC.,
CLUBCORP SYMPHONY TOWERS CLUB,
INC., CITY CLUB OF LOS ANGELES, INC.;
A/K/A CLUBCORP BUNKER HILL CLUB,
INC., SILICON VALLEY CAPITAL CLUB
A/K/A CLUBCORP SAN JOSE CLUB, INC.,
MORGAN RUN CLUB & RESORT, EMPIRE
RANCH GOLF CLUB, INC., OLD RANCH
COUNTRY CLUB, LLC, SHADOWRIDGE
GOLF CLUB, INC., ROYAL DRIVE
COUNTRY CLUB, INC., MCC
MANAGEMENT CORPORATION,
LAKEVIEW CITY CLUB, INC., SAN
FRANCISCO TENNIS CLUB, INC., LOS
GATOS TENNIS CLUB, INC., MARINA
CLUB MANAGEMENT, INC., CLUBCORP
AIRWAYS GOLF CLUB, INC., and DOES 1-
100,

Defendants.

NOTICE OF REMOVAL OF ACTION
CASE NO.

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, this action is hereby removed from the Superior Court of the State of California, County of San Francisco, to the United States District Court for the Northern District of California.  Removal is proper on the following grounds:

# I.    REMOVAL IS TIMELY

1.     Plaintiff the State of California ("Plaintiff"), filed its Complaint against Defendants in the Superior Court of the State of California, County of San Francisco, Case No. CGC-19-576520, on June 11, 2019 ("the State Court Action").

2.     All named Defendants in this action are represented by undersigned counsel, have received Plaintiff's Original Complaint ("Complaint") within the 30 days prior to the filing of this Notice of Removal, and now consent to the removal of this action with the reservation of all rights and defenses.  28 U.S.C. § 1446(b)(2)(B).    Defendants are: CLUBCORP HOLDINGS, INC.; CLUBCORP CLUB OPERATIONS, INC.; CCA CLUB OPERATIONS HOLDINGS, LLC, erroneously sued as CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC.; CLUBCORP ALISO VIEJO HOLDING CORP.; BERNARDO HEIGHTS CC, LLC erroneously sued as BERNARDO HEIGHTS COUNTRY CLUB; CLUBCORP BRAEMAR COUNTRY CLUB, INC.; CLUBCORP CANYON CREST COUNTRY CLUB, INC. erroneously sued as CLUBCORP CREST COUNTRY CLUB, INC.; CLUBCORP CENTER CLUB, INC.; CLUBCORP COTO PROPERTY HOLDINGS, INC.; CLUBCORP CROW CANYON MANAGEMENT CORP.; CLUBCORP DESERT FALLS COUNTRY CLUB, INC.; CLUBCORP GRANITE BAY MANAGEMENT, INC. erroneously sued as GRANITE BAY GOLF CLUB, INC. A/K/A CLUBCORP GRANITE BAY MANAGEMENT, INC.; CLUBCORP IW GOLF CLUB, INC.; CLUBCORP MISSION HILLS COUNTRY CLUB, INC.; CLUBCORP PORTER VALLEY COUNTRY CLUB, INC.; SANTA ROSA CC, LLC erroneously sued as SANTA ROSA GOLF & COUNTRY CLUB; CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC.; CLUBCORP TEAL BEND GOLF CLUB, INC.; CLUBCORP TURKEY CREEK GOLF CLUB, INC.; CLUBCORP SYMPHONY TOWERS CLUB, INC.; CLUBCORP BUNKER HILL CLUB, INC. erroneously sued as CITY CLUB OF LOS ANGELES, INC., A/K/A CLUBCORP BUNKER HILL

NOTICE OF REMOVAL OF ACTION
CASE NO.

4818-0335-9643.2

CLUB, INC.; CLUBCORP SAN JOSE CLUB, INC. erroneously sued as SILICON VALLEY CAPITAL CLUB A/K/A CLUBCORP SAN JOSE CLUB, INC.; CLUBCORP GOLF OF CALIFORNIA, LLC erroneously sued as MORGAN RUN CLUB & RESORT; EMPIRE RANCH, LLC erroneously sued as EMPIRE RANCH GOLF CLUB, INC.; SEQUOIA MANAGEMENT SERVICES LLC  erroneously sued as OLD RANCH COUNTRY CLUB, LLC; CLUBCORP SHADOW RIDGE GOLF CLUB, INC. erroneously sued as SHADOWRIDGE GOLF CLUB, INC.; OK ROYAL DRIVE COUNTRY CLUB, INC. erroneously sued as ROYAL DRIVE COUNTRY CLUB, INC.; OK MCC MANAGEMENT CORP. erroneously sued as MCC MANAGEMENT CORPORATION; OK LAKEVIEW CLUB, INC. erroneously sued as LAKEVIEW CITY CLUB, INC.; OK PRE 2.1.09 OWNER/OPERATOR OF SAN FRANCISCO TENNIS CLUB erroneously sued as SAN FRANCISCO TENNIS CLUB, INC.; OK LOS GATOS TENNIS, INC. erroneously sued as LOS GATOS TENNIS CLUB, INC.; OK MARINA CLUB MANAGEMENT, INC. erroneously sued as MARINA CLUB MANAGEMENT, INC.; and CLUBCORP AIRWAYS GOLF INC. erroneously sued as CLUBCORP AIRWAYS GOLF CLUB, INC.

3.     Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served on Defendants in the State Court Action as of the date of this filing are attached collectively to this Notice of Removal as **Exhibit A** and incorporated herein by reference.

4.     On June 11, 2019, all Defendants received by e-mail a form Notice of Acknowledgment of Receipt from Plaintiff's counsel attaching a copy of the Summons and the Complaint, Civil Case Cover Sheet, Notice of Case Management Conference and Alternate Dispute Resolution Package.

5.     Defendants executed and returned the Notice and Acknowledgment of Receipt on June 11, 2019. Under California Code of Civil Procedure Section 415.30(a), service is "deemed complete on the date a written acknowledgment of receipt of summons is executed, if such acknowledgment thereafter is returned to the sender."

6.     This Notice of Removal is timely because it is filed within 30 days of June 11, 2019.  28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1); *see also Prado v. Dart Container Corp. of California*, 373 F. Supp. 3d 1281, 1285 (N.D. Cal. 2019).

\ \ \

\ \ \

NOTICE OF REMOVAL OF ACTION
CASE NO.

4818-0335-9643.2

## II.   SUMMARY OF ALLEGATIONS AND BASES FOR REMOVAL

7.     Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because this Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1331.

8.     This case and all claims in this case arise under federal common law—meaning that the action itself arises under the laws of the United States.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *Illinois v. City of Milwaukee, Wis.*, 406 U.S. 91, 100 (1972) ("We see no reason not to give 'laws' its natural meaning, and therefore conclude that § 1331 jurisdiction will support claims founded upon federal common law as well as those of a statutory origin.") (internal citation omitted); *Downey v. Fed. Express Corp.*, No. C-92-4956 MHP, 1993 WL 463283, at *5 (N.D. Cal. Oct. 29, 1993) (citing *National Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 850 (1985)) ("**[u]nder 28 U.S.C. § 1331 this court has federal question jurisdiction over federal common law claims even though no specific statute is involved**.") (emphasis added).

9.     Plaintiff brought this suit against Defendants—including owners and operators of various private golf country clubs and business clubs—on a theory that Plaintiff has the right, power, and jurisdiction to escheat certain allegedly abandoned membership initiation deposits, and that such membership initiation deposits are subject to escheat under California's unclaimed property law.[1] (Compl. ¶¶ 6, 61.)  Plaintiff's two causes of action, one under California's Unfair Competition Law (Business and Professions Code section 17200 *et seq.*) ("UCL"), and the other under the California False Claims Act (Code of Civil Procedure Section 12650 *et seq.*) ("CFCA"), each depend on the claim that membership initiation deposits constitute unclaimed property under California's unclaimed property laws (Code of Civil Procedure Section 1500 *et seq.*). The CFCA cause of action, for example, alleges Defendants violated the CFCA by filing false holder reports – these are annual unclaimed property filings filed with the State Controller's Office ("SCO"). (Compl. ¶ 73.) Plaintiff alleges the holder reports are false because they did not include membership initiation deposits. (Compl. ¶ 72.) Thus, Plaintiff necessarily alleges that

---

[1] In this context, the "escheat" of property means that California would take custody of the property on behalf of the owners, who may then reclaim the property at any time.  Cal. Code Civ. Proc. § 1572(a)(3). (Compl. ¶¶ 3-6.)  All state unclaimed property laws are custodial escheat laws rather than "true" escheat laws, under which the state takes title to the property.

NOTICE OF REMOVAL OF ACTION
CASE NO.

1   the membership initiation deposits are subject to California's unclaimed property laws. (Compl. ¶ 71.)

2   Likewise, Plaintiff's UCL cause of action – which is based on the allegations that plaintiffs unlawfully

3   failed to return or escheat membership initiation deposits, that Defendants filed holder reports that

4   understate the amount of unclaimed property by omitting the membership initiation deposits and that

5   Defendants violated the CFCA by filing false holder reports – necessarily relies on the allegations that the

6   membership initiation deposits are subject to California's unclaimed property laws.  (Compl. ¶¶ 61, 66.)

7   As a result, Plaintiff seeks a judgment that would require Defendants to (1) return past-due deposits to

8   members; (2) be enjoined from engaging in violations of the UCL; and (3) pay statutory penalties, interest

9   and attorneys' fees (Comp. ¶ 6; *see id.* at p. 14.)

10          10.     The underpinning of Plaintiff's claims—alleging violations of California's unclaimed

11   property laws (Code of Civil Procedure Section 1500 *et seq.*)—necessarily depends on the resolution of

12   actually disputed and substantial questions of federal common law, as established by the United States

13   Supreme Court in a line of related decisions in *Texas v. New Jersey*, 379 U.S. 674 (1965), *Pennsylvania

14   v. New York*, 407 U.S. 206 (1972), and *Delaware v. New York*, 507 U.S. 490 (1993). **In particular, before

15   a State can escheat unclaimed intangible property, the State "bear[s] the burden of establishing"

16   that it has jurisdiction to escheat the property under federal common law.** *Pennsylvania v. New York*,

17   407 U.S. at 213 (emphasis added).  Thus, until Plaintiff pleads and proves that the State has the jurisdiction

18   to escheat under federal common law, California's unclaimed property laws cannot apply to the

19   membership initiation deposits at issue in the Complaint.

20          11.     If, under the federal common law giving rise to the claims at issue in the Complaint,

21   Plaintiff is unable to establish that the State has the jurisdiction to escheat the membership initiation

22   deposits at issue, then all of Plaintiff's claims necessarily fail as a matter of federal law.

23          12.     A claim "aris[es] under" federal law if "a well-pleaded complaint establishes either that

24   federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution

25   of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh,* 547 U.S. 677,

26   689-90 (2006) (quoting *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463

27   U.S. 1, 27–28 (1983)).  As far as the latter situation, "federal-question jurisdiction will lie over state-law

28   claims that implicate significant federal issues" or "turn on substantial questions of federal law." *Grable

& *Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 312 (2005).  In such cases, like this one, federal-question jurisdiction exists when the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.  This rule of decision "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312.

13.     It is axiomatic that federal common law is developed through decisions of federal courts. *See Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 156-57 (1985) (Brennan, J., concurring); *see also D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 472 (1942) (Jackson, J., concurring) ("federal courts are free to apply the traditional common-law technique of decision and draw upon sources of the common law"); *City of Milwaukee*, 406 U.S. at 105 n.6 ("[W]here there is an overriding federal interest in the need for a uniform rule of decision or where the controversy touches basic interests of federalism, we have fashioned federal common law.").[2]

14.     In *Texas v. New Jersey,* the United States Supreme Court established rules to determine when a State has the "right and power"—*i.e.*, the jurisdiction—to escheat unclaimed intangible property. 379 U.S. at 675, 680.  The Court pronounced what has become known as the "primary rule": "each item of property in question . . . is subject to escheat only by the State of the last known address of the creditor, as shown by the debtor's books and records." *Id.* at 681-82.  The Court also established a "secondary rule": if the last known address of the creditor is unknown, then the "State of corporate domicile" of "the debtor" has the jurisdiction to escheat property.  *Id.* at 682.

15.     Subsequently, in *Delaware v. New York,* the Supreme Court explained that the jurisdictional escheat rules created in *Texas v. New Jersey* "cannot be severed from the law that creates the underlying creditor-debtor relationships." 507 U.S. at 503. The Court thus held that disputes regarding "the right to escheat intangible personal property" must be resolved in the following three steps:

---

[2] A federal forum and the application and development of a uniform body of federal common law is particularly appropriate where, as here, "the question is whether the financial institution gets the money or one of several competing state governments." *See, e.g.*, *Taylor v. Westly*, 402 F.3d 924, 926 (9th Cir. 2005).

> First, we must determine the precise debtor-creditor relationship as defined by the law that creates the property at issue. Second, because the property interest in any debt belongs to the creditor rather than the debtor, the primary rule gives the first opportunity to escheat to the State of "the creditor's last known address as shown by the debtor's books and records." Finally, if the primary rule fails because the debtor's records disclose no address for a creditor or because the creditor's last known address is in a State whose laws do not provide for escheat, the secondary rule awards the right to escheat to the State in which the debtor is incorporated.

507 U.S. at 499-500 (internal citation omitted).

16. The jurisdictional escheat rules set forth in *Texas v. New Jersey* and *Delaware v. New York* constitute federal common law. *See City of Milwaukee*, 406 U.S. at 105-06 (citing *Texas v. New Jersey* as an example of federal common law); *Marathon Petroleum Corp. v. Sec'y of Fin. for Del.*, 876 F.3d 481, 484 (3d Cir. 2017) (explaining that Supreme Court decisions outlining states' authority to "escheat abandoned property" have been "[c]onstructed as federal common law"); *N.J. Retail Merchants Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 391-93 (3d Cir. 2012) (recognizing that jurisdictional "escheat rules" under *Texas v. New Jersey*, *Pennsylvania v. New York*, and *Delaware v. New York* constitute federal common law). This body of federal common law—which determines whether a state has the right to escheat intangible personal property in any particular case—is not only applicable to "disputes among states," but also, as here, "directly applicable to disputes between a private individual and a state." *Marathon*, 876 F.3d at 494; *Am. Petrofina Co. of Tex. v. Nance*, 859 F.2d 840, 842 (10th Cir. 1988).

17. In *Delaware v. New York*, the Supreme Court emphasized the supremacy of federal law in this area with the categorical statement that "no State may supersede" these federal common law rules. 507 U.S. at 500 (citation omitted). Thus, a state (here, California) must first establish, as a threshold issue, that it has the jurisdiction to escheat under the federal common law rules. *See Pennsylvania v. New York*, 407 U.S. at 213 (the State first "bear[s] the burden of establishing" that it has jurisdiction to escheat the property under federal common law); *Marathon*, 876 F.3d at 485, 499-500 (analyzing threshold issue of whether Delaware had "authority to escheat property" under federal common law). Only if the state can make that required showing under federal law will the state's own unclaimed property laws become applicable to determine if state law requires the escheat of such property.

18. Here, Plaintiff's "right to relief necessarily depends on resolution of [] substantial question[s] of federal law." *Franchise Tax Bd.,* 463 U.S. at 28. Those questions are disputed and

NOTICE OF REMOVAL OF ACTION
CASE NO.

substantial because Plaintiff's entire case hinges on first establishing that it has the jurisdiction to escheat the membership initiation deposits that are the subject of the Complaint.  More specifically, Plaintiff's claims and right to relief turn on the resolution of at least three substantial questions of federal common law.

19.    *First*, the Complaint raises a substantial question under federal common law because it is built on the legal premise that Defendants are holders under California's unclaimed property laws of unclaimed property that is reportable to California.  (Compl. ¶¶ 57-58.)  California's unclaimed property law defines a "holder" to include "any person **in possession** of property subject to this chapter belonging to another."  Cal. Civ. Proc. Code § 1501(e) (emphasis added).  Plaintiff's legal premise thus ignores the predicate step in determining whether California has jurisdiction to escheat under federal common law.  As *Delaware v. New York* makes clear, the initial step for assessing whether a state has a right to escheat intangible personal property is determining whether there is a "debtor-creditor relationship" and, if so, who **the debtor** is.  507 U.S. at 499-500; *Marathon*, 876 F.3d at 499 ("the Supreme Court has noted that the first step in determining the right to escheat property involves a determination of the precise debtor-creditor relationship") (internal quotations omitted).  Thus, Plaintiff must plead with specificity and ultimately prove that there is a "debtor-creditor relationship" with respect to the membership initiation deposits at issue and that each Defendant is a "debtor."

20.    For the membership initiation deposits at issue in this case, the precise debtor-creditor relationship—if one exists at all—is between the club and its member by function of their contractual relationship.  (*See, e.g.*, Compl. ¶ 49.)  Thus, if there is a debtor-creditor relationship, which Defendants do not concede, then these individual clubs would be the **"debtors"** with the contractual obligation to their respective club members, if any.

21.    By alleging that Defendants are "holders" under California's unclaimed property laws, and as such are required to escheat the membership initiation deposits, Plaintiff alleges that any Defendants who "are holding" the money at issue must escheat the membership initiation deposits **even if the Defendant is not a debtor**.  (Compl. ¶¶ 57, 63.)  In *Delaware v. New York*, however, "the Court rejected any efforts to loosen or change the [federal common law] rules by broadening the concept of a property-holding 'debtor.'"  *Marathon*, 876 F.3d at 490.  And yet that is exactly what Plaintiff seeks to do here.

NOTICE OF REMOVAL OF ACTION
CASE NO.

22.     By alleging that Defendants are "holders" of property that must be escheated, Plaintiff thus ignores the threshold jurisdictional question under federal common law as to whether each Defendant is a "debtor" to a club member.  If Defendants are not "debtors," then Plaintiff lacks jurisdiction under federal common law to require Defendants to escheat the membership initiation deposits to California.  Put differently, the definition of a "holder" of unclaimed property under California's unclaimed property law does not become relevant until **after** Plaintiff establishes that it has the right and power to escheat the membership initiation deposits from Defendants under applicable federal common law.  If Plaintiff cannot make that showing, then Plaintiff lacks the jurisdiction to escheat the membership initiation deposits and California's unclaimed property law is not applicable. By extension, California's CFCA and UCL would also be inapplicable.

23.     ***Second***, the Complaint raises a substantial question of whether—under federal common law—there is even a "debt" in relation to the membership initiation deposits that is potentially subject to escheat by California under its unclaimed property laws.  (*See* Compl. ¶ 61 ("ClubCorp's [Defendants'] membership contracts uniformly required that members pay an initiation deposit, which ClubCorp must return after 30 years. Once that time runs, ClubCorp has a liquidated and certain obligation to repay the money. If ClubCorp is unable to do so, it must escheat the money once the three-year dormancy period has expired. CCP § 1520(a)").  Here again, Plaintiff ignores its burden of first establishing that the State has jurisdiction to escheat these membership initiation deposits under federal common law.

24.     This threshold inquiry under federal common law is critical: If there is no debt, then there is no property potentially subject to escheat, and California's unclaimed property laws cannot apply. Indeed, in *Delaware v. New York*, the Court stated that "**the holder's legal obligations . . . define[] the escheatable property at issue.**"  507 U.S. at 503 (emphasis added); *see also Texas v. New Jersey,* 379 U.S at 680 (referring to the unclaimed property as a "debt" that is a "liability" and the "property of the creditor").

25.     Based on the contractual relationship and course of dealing between a club and its members, and on other applicable laws impacting the debtor-creditor relationship, certain conditions may need to be satisfied before a club member is entitled to return of a membership initiation deposit.  For example, the membership initiation deposit is not payable—*i.e.*, a refund is not obtainable—until after the

stipulated passage of time and the member makes a request or demand to the club. Moreover, a member may not be entitled to a refund of the membership initiation deposit if the member is in breach of the membership agreement with the club. The Complaint ignores these and other requirements. Plaintiff thus entirely skips over the threshold inquiry of whether California has the right to escheat the membership initiation deposits under federal law, which requires an examination of the "precise" underlying debtor-creditor relationships between Defendants and their members, and assumes that California's unclaimed property law is applicable (and that the membership initiation deposits are escheatable under such law). *Delaware v. New York*, 507 U.S. at 499–500. Plaintiff's requested relief would require Defendants to recognize its obligation to escheat funds to the State of California even though there is no "debt" owed.

26.    Plaintiff's position is contrary to the federal common law principles set forth in the *Texas v. New Jersey* line of cases. Under those cases, only the actual "debt" may be claimed by the state— nothing more. Consequently, if no legal obligation to pay exists, then Plaintiff lacks jurisdiction to escheat the membership initiation deposits under federal common law. By extension, Plaintiff's claims under the CFCA and UCL would also be inapplicable.

27.    ***Third***, even if the membership initiation deposits were "debts" and each Defendant were a "debtor," the Complaint raises another substantial question of federal common law: whether Plaintiff can establish jurisdiction to escheat the membership initiation deposits by showing that the primary rule or the secondary rule is satisfied. *Delaware v. New York*, 507 U.S. at 499-500 ("[T]he primary rule gives the first opportunity to escheat to the State of 'the creditor's last known address as shown by the debtor's books and records.' Finally, if the primary rule fails because the debtor's records disclose no address for a creditor or because the creditor's last known address is in a State whose laws do not provide for escheat, the secondary rule awards the right to escheat to the State in which the debtor is incorporated.") (internal citation omitted); *see also Pennsylvania v. New York*, 407 U.S. at 215-16 (requiring New York to prove that Western Union had no addresses for owners of unclaimed money orders, before New York would have the jurisdiction to escheat under the secondary rule).

28.    The Complaint omits any allegations as to whether the primary rule or the secondary rule are satisfied here (indeed, it fails to acknowledge even the existence of these rules), and instead provides figures for the total amount of membership initiation deposits due for return "to all of ClubCorp's current

NOTICE OF REMOVAL OF ACTION
CASE NO.

and former members." (Compl. ¶ 50.) Then, the Complaint, in conclusory fashion, states that Defendants "retained initiation deposits due for refund to Californians totaling more than $10 million." (Compl. ¶ 52.) In the same paragraph, the Complaint appears to define "Californian" as members of clubs in California, by stating that "initiation deposits are owed to California members and former members." (*Id*.) But under the primary rule, Plaintiff has jurisdiction to escheat only if "the last known address of the creditor, **as shown by the debtor's books and records**," is in California. *Texas*, 379 U.S. at 681–82 (emphasis added).

29.     Indeed, in Texas *v. New Jersey*, the Court emphasized that "since our inquiry here is not concerned with the technical domicile of the creditor, and since ease of administration is important where many small sums of money are involved, **the address on the records of the debtor, which in most cases will be the only one available, should be the only relevant last-known address.**" *Id*. at 681 n.11 (emphasis added).  Again, "no State may supersede" these federal common law rules. *Delaware*, 507 U.S. at 500 (citation omitted).  By attempting to expand the scope of the primary rule, Plaintiff thus unlawfully seeks to take custody of property that it lacks jurisdiction to escheat under federal law.

30.     Furthermore, if Defendants lack a record of the member's address, then the secondary rule applies only if the legal debtor is incorporated (*i.e.*, domiciled) in the State. *Delaware v. New York*, 507 U.S. at 499-500.  However, Plaintiff fails to allege any connection between the members and the State of California beyond the members' contract with a California club. (Compl. ¶ 52.)  Once again, such attempts to circumvent the federal common law jurisdictional escheat rules are prohibited. *Delaware*, 507 U.S. at 500; *Marathon*, 876 F.3d at 491 ("[T]he two states allowed to escheat under the [federal common law] rules of the *Texas* cases are the only states that can do so.").

31.     Thus, Plaintiff's purported right to relief necessarily depends on resolution of substantial and disputed questions of federal common law.  Plaintiff has a threshold burden to establish the State's jurisdiction to escheat. *Pennsylvania v. New York*, 407 U.S. at 213.  Plaintiff cannot prevail on any escheatment claim under California's unclaimed property law until after Plaintiff has established that (i) each Defendant is a "debtor" under federal common law; (ii) the membership initiation deposits are "debts" under federal common law; and (iii) California has jurisdiction to escheat the membership initiation deposits under either the primary rule or the secondary rule.

NOTICE OF REMOVAL OF ACTION
CASE NO.

32. These questions of federal common law—and similar questions of federal common law, also related to the *Texas v. New Jersey* rules—are critical, dispositive issues in this case. Plaintiff's right to relief necessarily depends on resolution of these substantial questions of federal law. *Empire Healthchoice,* 547 U.S. at 689–90 (quoting *Franchise Tax Bd.,* 463 U.S. at 27–28). Plaintiff cannot prevail on its claims under California's unclaimed property laws, unless Plaintiff first prevails on these substantial, dispositive questions of federal law. Until Plaintiff crosses that threshold, California's unclaimed property laws do not even become applicable.

33. This Court may "entertain [these questions of federal law] without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons,* 545 U.S. at 314. Indeed, because federal common law is developed only through decisions of the federal courts, these questions should be addressed in a federal forum, not in the courts of any individual state. *Mass. Mut. Life,* 473 U.S. at 156-57; *D'Oench, Duhme,* 315 U.S. at 472.

34. For the reasons set out above, all of the claims asserted in the Complaint are within this Court's original federal-question jurisdiction. But even if particular claims were not subject to original federal-question jurisdiction, those claims would be within this Court's jurisdiction under 28 U.S.C. § 1367(a) because they are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

## III.  THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

35. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331. Removal of this action is therefore proper under 28 U.S.C. § 1441 and § 1446.

36. The United States District Court for the Northern District of California is the appropriate venue for removal pursuant to 28 U.S.C. § 1441(a), because the United States District Court for the Northern District of California is the federal judicial district embracing the San Francisco County Superior Court where the State Court Action was originally filed. 28 U.S.C. § 124(d)(1); 28 U.S.C. § 1441(a).

37. True and correct copies of all process, pleadings, and orders served on Defendants to date are attached collectively to this Notice of Removal as **Exhibit A**. *See* 28 U.S.C. § 1446(a).

38. Upon filing this Notice of Removal, Defendants will furnish written notice to Plaintiff's

NOTICE OF REMOVAL OF ACTION
CASE NO.

1  counsel and will file and serve a copy of this Notice with the Clerk of the San Francisco County Superior

2  Court in accordance with 28 U.S.C. § 1446(d).

3         39.     In filing this Notice of Removal, Defendants expressly reserve and do not waive any or all

4  defenses and counterclaims available to them, including their defenses under Rule 12 of the Federal Rules

5  of Civil Procedure.

6  **IV.**   <u>**CONCLUSION**</u>

7        Based on the foregoing facts and allegations, this action is hereby removed from the Superior Court

8  of the State of California, County of San Francisco, to the United States District Court for the Northern

9  District of California.  The undersigned Defendants respectfully request that this Court exercise full

10  jurisdiction over this action to the exclusion of further proceedings in the state court and that this action

11  proceed in this Court as a properly removed action.

12

13  Dated:  July 10, 2019                **FOLEY & LARDNER LLP**

14

15                            By:  */s/ Thomas F. Carlucci*
                                  Thomas F. Carlucci

16                                    Jaime Dorenbaum

17                                  Attorneys for Defendants
                                CLUBCORP HOLDINGS, INC., et al.

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF ACTION
CASE NO.

4818-0335-9643.2

Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CLUBCORP HOLDINGS, INC., et al. (List of Additional Defendants Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PEOPLE OF THE STATE OF CALIFORNIA

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* San Francisco County Superior Court<br><br>400 McAllister St., San Francisco, CA 94102-4514 | **CASE NUMBER:** *(Número del Caso):*<br>CGC - 19 - 576620 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Courtney Towle, 455 Golden Gate Ave., Suite 11000, San Francisco, CA 94102

DATE: June 11, 2019        JUN 1 1 2019    CLERK OF THE COURT    Clerk, by _DE LA VEGA-NAVARRO, Rossaly_, Deputy
*(Fecha)*                              *(Secretario)*                                   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* ClubCorp Holding, Inc.

under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
       ☑ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| PEOPLE OF THE STATE OF CA. v. CLUBCORP HOLDINGS | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

CLUBCORP CLUB OPERATIONS, INC., CCA CLUB OPERATIONS HOLDING, LLC, CLUBCORP USA, INC., CLUBCORP ALISO VIEJO HOLDING CORP., BERNARDO HEIGHTS COUNTRY CLUB, CLUBCORP BRAEMAR COUNTRY CLUB, INC., CLUBCORP CREST COUNTRY CLUB, INC., CLUBCORP CENTER CLUB, INC., CLUBCORP COTO PROPERTY HOLDINGS, INC., CLUBCORP CROW CANYON MANAGEMENT CORP., CLUBCORP DESERT FALLS COUNTRY CLUB, INC., GRANITE BAY GOLF CLUB, INC., A/K/A CLUBCORP GRANITE BAY MANAGEMENT, INC., CLUBCORP IW GOLF CLUB, INC., CLUBCORP MISSION HILLS COUNTRY CLUB, INC., CLUBCORP PORTER VALLEY COUNTRY CLUB, INC., SANTA ROSA GOLF & COUNTRY CLUB, CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC., CLUBCORP TEAL BEND GOLF CLUB, INC., CLUBCORP TURKEY CREEK GOLF CLUB, INC., CLUBCORP SYMPHONY TOWERS CLUB, INC., CITY CLUB OF LOS ANGELES, INC., A/K/A CLUBCORP BUNKER HILL CLUB, INC., SILICON VALLEY CAPITAL CLUB A/K/A CLUBCORP SAN JOSE CLUB, INC., MORGAN RUN CLUB & RESORT, EMPIRE RANCH GOLF CLUB, INC., OLD RANCH COUNTRY CLUB, LLC, SHADOWRIDGE GOLF CLUB, INC., ROYAL DRIVE COUNTRY CLUB, INC., MCC MANAGEMENT CORPORATION, LAKEVIEW CITY CLUB, INC., SAN FRANCISCO TENNIS CLUB, INC., LOS GATOS TENNIS CLUB, INC., MARINA CLUB MANAGEMENT, INC., CLUBCORP AIRWAYS GOLF CLUB, INC., AND DOES 1-100,

Page __1__ of __1__

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

1   XAVIER BECERRA
    Attorney General of California
2   MARTIN GOYETTE (SBN 118344)
    Senior Assistant Attorney General
3   FREDERICK W. ACKER (SBN 208109)
    Supervising Deputy Attorney General
4   COURTNEY TOWLE (SBN 221698)
    JOANNA ROSEN FORSTER (SBN 244943)
5   Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3537
7    Fax:  (415) 703-5480
     E-mail:  Courtney.Towle@doj.ca.gov
8
    *Attorneys for the People of the State of California*
9

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 1 1 2019

CLERK OF THE COURT
BY:   ROSSALY DE LA VEGA
                    Deputy Clerk

10          SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                  COUNTY OF SAN FRANCISCO

12

13                                      CGC - 19 - 576620

14

15   | PEOPLE OF THE STATE OF | Case No. |
     | CALIFORNIA | |

16   |  | **COMPLAINT FOR TREBLE DAMAGES,** |
     |                          Plaintiff, | **CIVIL PENALTIES, RESTITUTION,** |
     | | **AND INJUNCTIVE RELIEF FOR** |
17   |          v. | **VIOLATION OF THE UNFAIR** |
     | | **COMPETITION LAW AND** |
18   | | **CALIFORNIA FALSE CLAIMS ACT** |
     | CLUBCORP HOLDINGS, INC., | |
19   | CLUBCORP CLUB OPERATIONS, INC., | |
     | CCA CLUB OPERATIONS HOLDING, | |
20   | LLC, CLUBCORP USA, INC., CLUBCORP | |
     | ALISO VIEJO HOLDING CORP., | |
21   | BERNARDO HEIGHTS COUNTRY CLUB, | **DEMAND FOR JURY TRIAL** |
     | CLUBCORP BRAEMAR COUNTRY | |
22   | CLUB, INC., CLUBCORP CREST | **Exempt from Filing Fees** |
     | COUNTRY CLUB, INC., CLUBCORP | |
23   | CENTER CLUB, INC., CLUBCORP COTO | **(Gov. Code, § 6103)** |
     | PROPERTY HOLDINGS, INC., | |
24   | CLUBCORP CROW CANYON | |
     | MANAGEMENT CORP., CLUBCORP | |
25   | DESERT FALLS COUNTRY CLUB, INC., | |
     | GRANITE BAY GOLF CLUB, INC., A/K/A | |
26   | CLUBCORP GRANITE BAY | |
     | MANAGEMENT, INC.,  CLUBCORP IW | |
27   | GOLF CLUB, INC., CLUBCORP MISSION | |
     | HILLS COUNTRY CLUB, INC., | |
28   | CLUBCORP PORTER VALLEY | |

                              1

COUNTRY CLUB, INC., SANTA ROSA GOLF & COUNTRY CLUB, CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC., CLUBCORP TEAL BEND GOLF CLUB, INC., CLUBCORP TURKEY CREEK GOLF CLUB, INC., CLUBCORP SYMPHONY TOWERS CLUB, INC., CITY CLUB OF LOS ANGELES, INC., A/K/A CLUBCORP BUNKER HILL CLUB, INC., SILICON VALLEY CAPITAL CLUB A/K/A CLUBCORP SAN JOSE CLUB, INC., MORGAN RUN CLUB & RESORT, EMPIRE RANCH GOLF CLUB, INC., OLD RANCH COUNTRY CLUB, LLC, SHADOWRIDGE GOLF CLUB, INC., ROYAL DRIVE COUNTRY CLUB, INC., MCC MANAGEMENT CORPORATION, LAKEVIEW CITY CLUB, INC., SAN FRANCISCO TENNIS CLUB, INC., LOS GATOS TENNIS CLUB, INC., MARINA CLUB MANAGEMENT, INC., CLUBCORP AIRWAYS GOLF CLUB, INC., AND DOES 1-100,

                                            Defendants.

The People of the State of California, by and through Xavier Becerra, Attorney General of the State of California, based on information and belief, allege as follows for their Complaint for Violation of the Unfair Competition Law ("UCL") and California False Claims Act ("CFCA"):

### INTRODUCTION AND GENERAL BACKGROUND

1. This action arises from the practice of defendant country club owners and operators of withholding money due for return to their members. Over several decades, more than 9,000 Californians entered into membership contracts and paid membership initiation deposits with an agreement that the deposits would be returned after 30 years.

2. As of 2017, the sum of initiation deposits ripe for repayment to Californians totaled more than $10 million. Instead of returning this money, and contrary to the requirements of their membership contracts, Defendants kept it and counted it as an asset.

3.     California's Unclaimed Property Law (UPL) requires businesses to make efforts to return property to its rightful owners, and where those owners cannot be found, to escheat the property to the California State Controller's Office (SCO) to be held for the rightful owner. Though Defendants filed unclaimed property reports with the SCO, they intentionally omitted the initiation deposits due for return, and they did not escheat the deposits to the SCO.

4.     Defendants' falsification of the reports they filed with the SCO fraudulently reduced the amounts they owed to the state, thereby violating the CFCA.

5.     Defendants are fully aware of the requirements of California law and their own contracts, but refuse to either refund or escheat the past-due deposits. This is in keeping with their founder's philosophy that "a dollar paid back is a dollar lost forever."

6.     It is time for Defendants to pay back what they owe. Their actions violate the UPL, the UCL, and the CFCA. They must return past-due deposits to their rightful owners. If they cannot do so, they must escheat the deposits to the SCO. They cannot simply keep the money.

## THE PARTIES

### I.     PLAINTIFF, THE PEOPLE OF THE STATE OF CALIFORNIA

7.     Attorney General Xavier Becerra is the chief law officer of the State of California ("State"). He brings this action on behalf of Plaintiff, the People of the State of California.

### II.    DEFENDANTS

8.     Defendant CLUBCORP HOLDINGS, INC. is a Delaware LLC with a principal place of business in Texas. CLUBCORP HOLDINGS, INC. purports to be the largest owner and operator of private golf and country clubs in the country. Through its various subsidiaries and affiliates, it owns or operates more than 200 clubs worldwide, including more than 20 subsidiary or affiliated clubs located in California, which are also parties to this action. CLUBCORP HOLDINGS, INC. conducts business in California.

9.     Defendant CLUBCORP CLUB OPERATIONS, INC. is a Delaware LLC with a principal place of business in Texas. CLUBCORP CLUB OPERATIONS, INC. conducts business in California, including operation of the more than 20 affiliated clubs located in California, which are also parties to this action.

1    10.    Defendant CCA CLUB OPERATIONS HOLDING, LLC is a Delaware LLC with a

2    principal place of business in Texas.  CCA CLUB OPERATIONS HOLDING, LLC conducts

3    business in California, including operation of the more than 20 affiliated clubs located in

4    California, which are also parties to this action.

5    11.    Defendant CLUBCORP USA, INC. is a Delaware LLC with a principal place of

6    business in Texas.  CLUBCORP USA, INC. conducts business in California, including operation

7    of the more than 20 affiliated clubs located in California, which are also parties to this action.

8    12.    Defendant CLUBCORP ALISO VIEJO HOLDING CORP. is an affiliate, subsidiary,

9    or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

10    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

11    CLUBCORP USA, INC.  CLUBCORP ALISO VIEJO HOLDING CORP.'s principal place of

12    business is in Aliso Viejo, California.

13    13.    Defendant BERNARDO HEIGHTS COUNTRY CLUB is an affiliate, subsidiary, or

14    otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

15    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

16    CLUBCORP USA, INC.  BERNARDO HEIGHTS COUNTRY CLUB's principal place of

17    business is in San Diego, California.

18    14.    Defendant CLUBCORP BRAEMAR COUNTRY CLUB, INC. is an affiliate,

19    subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

20    CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

21    LLC, and/or CLUBCORP USA, INC.  CLUBCORP BRAEMAR COUNTRY CLUB, INC.'s

22    principal place of business is in Tarzana, California.

23    15.    Defendant CLUBCORP CREST COUNTRY CLUB, INC. is an affiliate, subsidiary,

24    or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

25    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

26    CLUBCORP USA, INC.  CLUBCORP CREST COUNTRY CLUB, INC.'s principal place of

27    business is in Riverside, California.

28

COMPLAINT FOR VIOLATION OF THE UCL AND CFCA

16.     Defendant CLUBCORP CENTER CLUB, INC., is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP CENTER CLUB, INC.'s principal place of business is in Costa Mesa, California.

17.     Defendant CLUBCORP COTO PROPERTY HOLDINGS, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or Clubcorp USA, Inc.  CLUBCORP COTO PROPERTY HOLDINGS, INC.'s principal place of business is in Coto de Caza, California.

18.     Defendant CLUBCORP CROW CANYON MANAGEMENT CORP. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP CROW CANYON MANAGEMENT CORP.'s principal place of business is in Danville, California.

19.     Defendant CLUBCORP DESERT FALLS COUNTRY CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP DESERT FALLS COUNTRY CLUB, INC.'s principal place of business is in Palm Desert, California.

20.     Defendant GRANITE BAY GOLF CLUB, INC. a/k/a CLUBCORP GRANITE BAY MANAGEMENT, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  GRANITE BAY GOLF CLUB, INC. a/k/a CLUBCORP GRANITE BAY MANAGEMENT, INC.'s principal place of business is in Granite Bay, California.

21.     Defendant CLUBCORP IW GOLF CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

1  CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

2  CLUBCORP USA, INC.  CLUBCORP IW GOLF CLUB, INC.'s principal place of business is in

3  Indian Wells, California.

4      22.   Defendant CLUBCORP MISSION HILLS COUNTRY CLUB, INC. is an affiliate,

5  subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

6  CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

7  LLC, and/or CLUBCORP USA, INC.  CLUBCORP MISSION HILLS COUNTRY CLUB,

8  INC.'s principal place of business is in Rancho Mirage, California.

9      23.   Defendant CLUBCORP PORTER VALLEY COUNTRY CLUB, INC. is an affiliate,

10  subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

11  CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

12  LLC, and/or CLUBCORP USA, INC.  CLUBCORP PORTER VALLEY COUNTRY CLUB,

13  INC.'s principal place of business is in Northridge, California.

14      24.   Defendant SANTA ROSA GOLF & COUNTRY CLUB is an affiliate, subsidiary, or

15  otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

16  CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

17  CLUBCORP USA, INC.  Defendant SANTA ROSA GOLF & COUNTRY CLUB's principal

18  place of business is in Santa Rosa, California.

19      25.   Defendant CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC. is an

20  affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC.,

21  and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS

22  HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP SPRING VALLEY LAKE

23  COUNTRY CLUB, INC.'s principal place of business is in Victorville, California.

24      26.   Defendant CLUBCORP TEAL BEND GOLF CLUB, INC. is an affiliate, subsidiary,

25  or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

26  CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

27  CLUBCORP USA, INC.  CLUBCORP TEAL BEND GOLF CLUB, INC.'s principal place of

28  business is in Sacramento, California.

27.     Defendant CLUBCORP TURKEY CREEK GOLF CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP TURKEY CREEK GOLF CLUB, INC.'s principal place of business is in Lincoln, California.

28.     Defendant CLUBCORP SYMPHONY TOWERS CLUB, INC., is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  Defendant CLUBCORP SYMPHONY TOWERS CLUB, INC.'s principal place of business is in San Diego, California.

29.     On information and belief, defendant THE CITY CLUB OF LOS ANGELES, INC. a/k/a CLUBCORP BUNKER HILL CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  Defendant THE CITY CLUB OF LOS ANGELES, INC., a/k/a CLUBCORP BUNKER HILL CLUB, INC.'s principal place of business is located in Los Angeles, California.

30.     Defendant SILICON VALLEY CAPITAL CLUB a/k/a CLUBCORP SAN JOSE CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  SILICON VALLEY CAPITAL CLUB a/k/a CLUBCORP SAN JOSE CLUB, INC.'s principal place of business is in San Jose, California.

31.     Defendant MORGAN RUN CLUB & RESORT is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  MORGAN RUN CLUB & RESORT's principal place of business is in Rancho Santa Fe, California.

32.    Defendant EMPIRE RANCH GOLF CLUB, LLC is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  EMPIRE RANCH GOLF CLUB, LLC's principal place of business is in Folsom, California.

33.    Defendant OLD RANCH COUNTRY CLUB, LLC is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  OLD RANCH COUNTRY CLUB, LLC's principal place of business is in Seal Beach, California.

34.    Defendant SHADOWRIDGE GOLF CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  SHADOWRIDGE GOLF CLUB, INC.'s principal place of business is in Vista, California.

35.    Defendant ROYAL DRIVE COUNTRY CLUB, INC. was an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC., until January 1981.  Defendant ROYAL DRIVE COUNTRY CLUB, INC.'s principal place of business was in the State of California.

36.    Defendant MCC MANAGEMENT CORPORATION was an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC., until January 1993.  MCC MANAGEMENT CORPORATION's principal place of business was in the State of California.

37.    Defendant LAKEVIEW CITY CLUB, INC. was an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP

8

USA, INC., until December 1996.  Defendant LAKEVIEW CITY CLUB, INC.'s principal place of business was in the State of California.

38.    Defendant SAN FRANCISCO TENNIS CLUB, INC. was an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or Clubcorp Club Operations, Inc., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC., until February 2009.  SAN FRANCISCO TENNIS CLUB, INC.'s principal place of business was located at 645 5th St., San Francisco, in the State of California.

39.    Defendant LOS GATOS TENNIS CLUB, INC. was an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC., until April 1997.  LOS GATOS TENNIS CLUB, INC.'s principal place of business was in the State of California.

40.    Defendant MARINA CLUB MANAGEMENT, INC. was an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC., until January 1988.  MARINA CLUB MANAGEMENT, INC.'s principal place of business was in the State of California.

41.    Defendant CLUBCORP AIRWAYS GOLF CLUB, INC., is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC., until September 2016.  CLUBCORP AIRWAYS GOLF CLUB, INC.'s principal place of business was in Fresno, California.

42.    Collectively, the above-listed defendants are referred to as "ClubCorp" or "Defendants."

43.    Defendants DOES 1 through 100, inclusive, are sued herein under fictitious names.  Their true names and capacities are unknown to the Plaintiff.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and capacities herein. Plaintiff is informed and believes and thereon alleges that each of the

9

1    fictitiously named defendants is responsible in some manner for the occurrences herein alleged

2    and that Plaintiff's damages and injuries as herein alleged were proximately caused by such

3    defendants.

4        44.    Each defendant named herein, including all fictitiously named defendants, is and at

5    all times mentioned was, the agent or employee of the remaining defendants, and in doing or

6    failing to do the things hereafter alleged, was acting in the course and scope of that agency or

7    employment with the full consent, either express or implied, of each of the remaining defendants.

8                                    **JURISDICTION**

9        45.    This Court has jurisdiction to hear the claims alleged in this Complaint and is a court

10   of competent jurisdiction to grant the relief requested.

11                                      **VENUE**

12       46.    At all relevant times alleged in this Complaint, Defendants did business in the City

13   and County of San Francisco.

14       47.    Violations of law alleged in this Complaint occurred in the City and County of

15   San Francisco.

16                               **FACTUAL ALLEGATIONS**

17       48.    Founded in 1957, ClubCorp describes itself as "a membership-based leisure business

18   and a leading owner-operator of private golf and country clubs and business, sports and alumni

19   clubs in North America."

20       49.    Since ClubCorp was founded, new members have been expected to pay an initiation

21   deposit upon their acceptance. All membership agreements are—and have always been—drafted

22   by Defendants.  While the specific wording of the agreements varies somewhat, they all provide

23   that the deposit will be unconditionally refunded to the member after thirty years.  For example,

24   the agreement used by CLUBCORP PORTER VALLEY COUNTRY CLUB, INC. provides as

25   follows:

26       It is further agreed and understood that thirty (30) years from the date of payment of
         each installment of the initiation deposit the Club will unconditionally repay Applicant one
27       hundred percent (100%) of that installment of the initiation deposit made by Applicant to
         the Club.
28

                                          10

The deposit amounts varied by club and by year from $300 to $7,500 or more.

50.     Despite this contractual repayment term, for decades ClubCorp has retained initiation deposits long past the dates they come due for repayment. Keeping members' deposit money instead of returning it as required by contract is ClubCorp's business practice not just in California but nationwide.

51.     Over the sixty years of its existence, ClubCorp has collected over $717,100,000 in initiation deposits. As of June 13, 2017, the total amount of initiation deposits currently due for return to all of ClubCorp's current and former members had grown to $178,086,000.

52.     ClubCorp's records show that it retained initiation deposits due for refund to Californians totaling more than $10 million. These initiation deposits are owed to approximately 9,000 California members and former members.

53.     Since its inception, ClubCorp has relied on membership initiation deposits to help fund club development and acquisitions. As ClubCorp founder Robert H. Dedman, Sr., explained in his autobiography, "To be a good entrepreneur, you have to know how to intelligently use what we call OPM, 'Other People's Money. . . .' If we didn't sell memberships, we couldn't meet our construction payments on the subsequent phases."

54.     In his autobiography, Mr. Dedman set forth what he called the "developer's creed": "A dollar borrowed is a dollar earned. A dollar refinanced is a dollar saved. And a dollar paid back is a dollar lost forever."

55.     Mr. Dedman also spelled out the "CEO's creed"—"Debt that does not become due before I retire or sell my stock is equity."

56.     ClubCorp targets new member prospects who are around age forty. Thus, when the average 30-year deposit contract has run, members are in their seventies. Given the considerable length of time between signing the membership agreement and making the initiation deposit and the date on which ClubCorp is obligated to return the deposit, many members likely forget that their deposit is due for refund. Further, members also may die before the deposit is due for refund, and their executors and heirs likely will not know about the deposits.

COMPLAINT FOR VIOLATION OF THE UCL AND CFCA

57.   Defendants are holding property, monetary deposits, that indisputably belongs to others.

58.   Defendants have filed annual unclaimed property filings, called "holder reports," with the SCO. The UPL requires businesses and other holders of unclaimed property to file reports with the SCO after a statutory period if the property cannot be returned to its rightful owner. These "holder reports" list all the unclaimed property in the holder's possession, which the holder then escheats to the State.

59.   Uniformly, Defendants' holder reports do not list the membership initiation deposits due for return.

60.   The UPL mandates that "all intangible property… that is held or owing in the ordinary course of the holder's business and has remained unclaimed by the owner for more than three years after it became payable or distributable escheats to this state." CCP §1520(a). That includes obligations to pay money.

61.   The membership deposits at issue are subject to escheat under the UPL. ClubCorp's membership contracts uniformly required that members pay an initiation deposit, which ClubCorp must return after 30 years. Once that time runs, ClubCorp has a liquidated and certain obligation to repay the money. If ClubCorp is unable to do so, it must escheat the money once the three-year dormancy period has expired. CCP §1520(a).

62.   ClubCorp's failure to refund initiation deposits harms its members by depriving them of their money and any use to which they would put it.

63.   ClubCorp's failure to escheat initiation deposits for which the members could not be located has harmed the State of California by depriving it of the use of the funds that should have been escheated.

64.   ClubCorp's long-standing practice of retaining initiation deposits due for refund has benefitted ClubCorp by providing them an asset, millions of dollars, that they can put to business uses. They have even described the deposits due for return as "non-interest bearing" loans or "forgivable loans."

65.   ClubCorp's practices violate California law.

12

**FIRST CAUSE OF ACTION**
**Unfair Competition Law — Business and Professions Code § 17200, *et seq.***

66.   The People incorporate herein by reference the allegations in paragraphs 1 – 65 of this Complaint.

67.   Defendants have engaged in, and continue to engage in, unlawful, fraudulent, or unfair acts or practices in the conduct of a business, which acts or practices constitute unfair competition, as that term is defined in Business and Professions Code section 17200. Defendants' acts or practices include, but are not limited to, the following:

a. Knowingly retaining membership initiation deposits due for return despite contract language requiring their return to members;

b. Knowingly filing unclaimed property reports with the SCO that understate the amount of unclaimed property held by Defendants, thereby violating the UPL;

c. Failing to return or escheat membership initiation deposits due for return; and

d. Violating Government Code section 12651 et seq., as described in the Second Cause of Action, herein.

**SECOND CAUSE OF ACTION**
**False Claims Act—Government Code § 12651, subd. (a)(7)**

68.   The People incorporate herein by reference the allegations in paragraphs 1 – 67 of this Complaint.

69.   The terms "knowing" and "knowingly," as set forth in the CFCA, mean that a person, with respect to information, has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information.  Proof of specific intent to defraud is not required.

70.   Defendants knowingly submitted, or caused to be submitted to the SCO unclaimed property holder reports that uniformly omit initiation deposits due for return.

71.   Initiation deposits that cannot be returned when due must escheat to the SCO per the UPL.

1  72.   Defendants filed false holder reports by knowingly omitting obligations to pay or

2  transmit money to the state.

3  73.   Defendants violated the CFCA by knowingly filing false holder reports with the SCO.

4  74.   As a proximate result of Defendants' actions, the People suffered damages in a

5  specific amount to be determined at trial.

6  **PRAYER FOR RELIEF**

7  Wherefore, Plaintiff, the People of the State of California, pray for relief against all

8  Defendants as follows:

9  1.   Pursuant to Business and Professions Code section 17203, that Defendants, and each

10  of them, be ordered to pay restitution to all members whose deposits were held past their

11  contractual return date and interest in an amount according to proof;

12  2.   Pursuant to Business and Professions Code section 17206, that Defendants, and each

13  of them, be ordered to pay a civil penalty in the amount of $2,500 for each violation of Business

14  and Professions Code section 17200, in an amount according to proof;

15  3.   Pursuant to Business and Professions Code section 17203, that Defendants, and each

16  of them, be enjoined from engaging in violations of the California Unfair Competition Law,

17  including without limitation the unfair, unlawful, and deceptive practices alleged herein;

18  4.   Pursuant to Government Code section 12651 subdivision (a), three times the damages

19  that the People of the State of California have suffered as a result of Defendants' acts, in an

20  amount to be determined, plus interest;

21  5.   Pursuant to Government Code section 12651, subdivision (a), the maximum

22  allowable civil penalties for each false claim;

23  6.   All legal fees and costs incurred by Plaintiffs in bringing this action, including

24  investigative costs, expert fees, attorney's fees, and litigation costs; and

25  7.   Such further or additional relief as the Court deems proper.

26

27

28

1 | Dated:  June 11, 2019

Respectfully Submitted,

2

XAVIER BECERRA
Attorney General of California
3
MARTIN GOYETTE
Senior Assistant Attorney General
4
FREDERICK W. ACKER
Supervising Deputy Attorney General
5

6

7

8

COURTNEY TOWLE
Deputy Attorney General
*Attorneys for the People of the State of*
9
*California*

10 | SA2012105383
21473281.docx
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

1          DEMAND FOR JURY TRIAL

2      Plaintiff respectfully demands a jury trial for the alleged claims.

3

4    Dated:  June 11, 2019                    Respectfully Submitted,

5                                             XAVIER BECERRA
                                              Attorney General of California
6                                             MARTIN GOYETTE
                                              Senior Assistant Attorney General
7                                             FREDERICK W. ACKER
                                              Supervising Deputy Attorney General
8

9

10

11                                            COURTNEY TOWLE
                                              Deputy Attorney General
                                              *Attorneys for the People of the State of*
12                                            *California*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE UCL AND CFCA

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Courtney Towle, SBN 221698
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Email: courtney.towle@doj.ca.gov
TELEPHONE NO.: 415-510-3537      FAX NO.: 415-703-5480
ATTORNEY FOR *(Name):* People of the State of California

FOR COURT USE ONLY

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 1 1 2019

CLERK OF THE COURT
BY: ROSSALY DE LA VEGA
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

CASE NAME:
People of the State of California v. ClubCorp Holdings, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited  [ ] Limited | [ ] Counter  [ ] Joinder | |
| (Amount demanded exceeds $25,000)  (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: CGC - 19 - 576620  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[✓] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[ ] punitive
4. Number of causes of action *(specify):* Two
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 11, 2019
Courtney Towle, Deputy Attorney General
_____(TYPE OR PRINT NAME)_____      ▶      _____(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_____

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
      or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
  case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **NOV-13-2019** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA 94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Information Package**



The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**
It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**\*\*Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint\*\***

**WHAT ARE THE ADR OPTIONS?**
The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**
Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2)  MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience  requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco  Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional  malpractice, insurance coverage,  toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program.  A preference for a specific judge may be indicated.  The court will coordinate assignment of cases for the program.  There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.</u>

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name  and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: | |
| ATTORNEY FOR  (Name): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER: | |
| DEFENDANT/RESPONDENT: | |

| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: _____ |
|---|---|
| | **DEPARTMENT 610** |

**1)   The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐   **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐   **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐   **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐   **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐   **Other ADR process** (describe) _____

**2)   The parties agree that the ADR Process shall be completed by (date):** _____

**3)   Plaintiff(s) and Defendant(s) further agree as follows:**

_____

| | |
|---|---|
| _____ | _____ |
| Name of Party Stipulating | Name of Party Stipulating |
| _____ | _____ |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| _____ | _____ |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2  10/18                                     **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Courtney Towle, Deputy Attorney General, SBN 221698<br>California Department of Justice, Office of the Attorney General<br>455 Golden Gate Ave, Suite 11000<br>San Francisco, CA 94102<br>TELEPHONE NO.: 415-510-3537   FAX NO. *(Optional):* 415-703-5480<br>E-MAIL ADDRESS *(Optional):* courtney.towle@doj.ca.gov<br>ATTORNEY FOR *(Name):* People of the State of California | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER: People of the State of California

DEFENDANT/RESPONDENT: ClubCorp Holdings, Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CGC-19-576620 |
|---|---|

TO *(insert name of party being served):* ClubCorp Holdings, Inc., et al.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: June 11, 2019

Frederick W. Acker, Supervising Deputy Attorney General
(TYPE OR PRINT NAME)                                                            (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]   A copy of the summons and of the complaint.
2. [✓]   Other *(specify):*
   Civil Case Cover Sheet; Summons; Complaint; Notice of Case Management Conference;
   Alternative Dispute Resolution (ADR Package)

*(To be completed by recipient):*

Date this form is signed:   6/17/19

Thomas F. Carlucci for all Defendants
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                        ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Courtney Towle, SBN 221698<br>455 Golden Gate Ave., Suite 11000<br>San Francisco, CA 94102 | |

TELEPHONE NO.: 415-510-3537   FAX NO. *(Optional):* 415-703-5480
E-MAIL ADDRESS *(Optional):* Email: courtney.towle@doj.ca.gov
ATTORNEY FOR *(Name):* People of the State of California

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**06/17/2019**
**Clerk of the Court**
**BY: JUDITH NUNEZ**
**Deputy Clerk**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

PLAINTIFF/PETITIONER:  People of the State of California

DEFENDANT/RESPONDENT:  ClubCorp Holdings, Inc., et al.

CASE NUMBER:
CGC-19-576620

JUDICIAL OFFICER:

### NOTICE OF RELATED CASE

DEPT.:

---

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Betty Yee v. ClubCorp Holdings, Inc. et al.

   b. Case number:  CGC-19-576314

   c. Court: [✓]  same as above

   [ ]  other state or federal court *(name and address):*

   d. Department:

   e. Case type: [ ] limited civil  [✓] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

   f. Filing date: May 28, 2019

   g. Has this case been designated or determined as "complex?"  [ ] Yes  [✓] No

   h. Relationship of this case to the case referenced above *(check all that apply):*

   [✓]  involves the same parties and is based on the same or similar claims.

   [✓]  arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   [✓]  involves claims against, title to, possession of, or damages to the same property.

   [✓]  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   [ ]  Additional explanation is attached in attachment 1h

   i. Status of case:

   [✓]  pending

   [ ]  dismissed  [ ] with  [ ] without prejudice

   [ ]  disposed of by judgment

2. a. Title:

   b. Case number:

   c. Court: [ ]  same as above

   [ ]  other state or federal court *(name and address):*

   d. Department:

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
*www.courtinfo.ca.gov*

CM-015

| PLAINTIFF/PETITIONER: People of the State of California | CASE NUMBER: |
| DEFENDANT/RESPONDENT: ClubCorp Holdings, Inc., et al. | CGC-19-576620 |

2. *(continued)*

e. Case type: [ ] limited civil [ ] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

f. Filing date:

g. Has this case been designated or determined as "complex?" [ ] Yes [ ] No

h. Relationship of this case to the case referenced above *(check all that apply):*

[ ] involves the same parties and is based on the same or similar claims.

[ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

[ ] involves claims against, title to, possession of, or damages to the same property.

[ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

[ ] Additional explanation is attached in attachment 2h

i. Status of case:

[ ] pending

[ ] dismissed [ ] with [ ] without prejudice

[ ] disposed of by judgment

3. a. Title:

b. Case number:

c. Court: [ ] same as above

[ ] other state or federal court *(name and address):*

d. Department:

e. Case type: [ ] limited civil [ ] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*

f. Filing date:

g. Has this case been designated or determined as "complex?" [ ] Yes [ ] No

h. Relationship of this case to the case referenced above *(check all that apply):*

[ ] involves the same parties and is based on the same or similar claims.

[ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

[ ] involves claims against, title to, possession of, or damages to the same property.

[ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

[ ] Additional explanation is attached in attachment 3h

i. Status of case:

[ ] pending

[ ] dismissed [ ] with [ ] without prejudice

[ ] disposed of by judgment

4. [ ] Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: June 17, 2019

Courtney Towle
_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER:  People of the State of California | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  ClubCorp Holdings, Inc., et al. | CGC-19-576620 |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service.  The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.**  I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

   455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

   a. ☐  deposited the sealed envelope with the United States Postal Service.

   b. ☑  placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:

   a. on *(date):* June 17, 2019

   b. from *(city and state):* San Francisco, CA

4. The envelope was addressed and mailed as follows:

   a. Name of person served:
   Thomas F Carlucci, Foley & Lardner LLP
   Street address: 555 California St., Ste. 1700
   City: San Francisco
   State and zip code: CA 94104-1520

   c. Name of person served:
   S. Michele Inan and Jay Russell
   Street address: 455 Golden Gate Ave., Ste. 11000
   City: San Francisco
   State and zip code: CA, 94102

   b. Name of person served:

   Street address:
   City:
   State and zip code:

   d. Name of person served:

   Street address:
   City:
   State and zip code:

   ☐  Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: June 17, 2019

Michelle Dubonnet
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

1   XAVIER BECERRA
    Attorney General of California
2   MARTIN GOYETTE (SBN 118344)
    Senior Assistant Attorney General
3   FREDERICK W. ACKER (SBN 208109)
    Supervising Deputy Attorney General
4   COURTNEY TOWLE (SBN 221698)
    JOANNA ROSEN FORSTER (SBN 244943)
5   Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
6    San Francisco, CA 94102-7004
     Telephone: (415) 510-3537
7    Fax: (415) 703-5480
     E-mail: Courtney.Towle@doj.ca.gov
8
    *Attorneys for the People of the State of California*
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        COUNTY OF SAN FRANCISCO

12

13

14

15  **PEOPLE OF THE STATE OF**          Case No. CGC-19-576620
    **CALIFORNIA**
16                                      **UNOPPOSED APPLICATION FOR**
                                        **APPROVAL OF COMPLEX**
                            Plaintiff,  **LITIGATION DESIGNATION**
17            **v.**
                                        Dept: 304
18                                      Trial Date: Not Set
    **CLUBCORP HOLDINGS, INC.,**        **Action Filed: June 11, 2019**
19  **CLUBCORP CLUB OPERATIONS, INC.,**
    **CCA CLUB OPERATIONS HOLDING,**
20  **LLC, CLUBCORP USA, INC., CLUBCORP**  **Exempt from Filing Fees**
    **ALISO VIEJO HOLDING CORP.,**
21  **BERNARDO HEIGHTS COUNTRY CLUB,**  **(Gov. Code, § 6103)**
    **CLUBCORP BRAEMAR COUNTRY**
22  **CLUB, INC., CLUBCORP CREST**
    **COUNTRY CLUB, INC., CLUBCORP**
23  **CENTER CLUB, INC., CLUBCORP COTO**
    **PROPERTY HOLDINGS, INC.,**
24  **CLUBCORP CROW CANYON**
    **MANAGEMENT CORP., CLUBCORP**
25  **DESERT FALLS COUNTRY CLUB, INC.,**
    **GRANITE BAY GOLF CLUB, INC., A/K/A**
26  **CLUBCORP GRANITE BAY**
    **MANAGEMENT, INC., CLUBCORP IW**
27  **GOLF CLUB, INC., CLUBCORP MISSION**
    **HILLS COUNTRY CLUB, INC.,**
28  **CLUBCORP PORTER VALLEY**

                                    1

1   COUNTRY CLUB, INC., SANTA ROSA
    GOLF & COUNTRY CLUB, CLUBCORP
2   SPRING VALLEY LAKE COUNTRY
    CLUB, INC., CLUBCORP TEAL BEND
3   GOLF CLUB, INC., CLUBCORP TURKEY
    CREEK GOLF CLUB, INC., CLUBCORP
4   SYMPHONY TOWERS CLUB, INC., CITY
    CLUB OF LOS ANGELES, INC., A/K/A
5   CLUBCORP BUNKER HILL CLUB, INC.,
    SILICON VALLEY CAPITAL CLUB
6   A/K/A CLUBCORP SAN JOSE CLUB,
    INC., MORGAN RUN CLUB & RESORT,
7   EMPIRE RANCH GOLF CLUB, INC., OLD
    RANCH COUNTRY CLUB, LLC,
8   SHADOWRIDGE GOLF CLUB, INC.,
    ROYAL DRIVE COUNTRY CLUB, INC.,
9   MCC MANAGEMENT CORPORATION,
    LAKEVIEW CITY CLUB, INC., SAN
10  FRANCISCO TENNIS CLUB, INC., LOS
    GATOS TENNIS CLUB, INC., MARINA
11  CLUB MANAGEMENT, INC.,
    CLUBCORP AIRWAYS GOLF CLUB,
12  INC., AND DOES 1-100,

13                          Defendants.

14

15

16              I.    INTRODUCTION

17       Plaintiff, the People of California by and through Xavier Becerra, Attorney General of the

18  State of California (the "Attorney General"), hereby applies for approval of complex case

19  designation pursuant to Rule of Court 3.400, San Francisco Superior Court Local Rule 3.5(c), and

20  the Court's Amended General Order re: Procedure for Approval of Complex Litigation

21  Designation dated October 23, 2007.

22       This case is "complex" because it "requires exceptional judicial management to avoid

23  placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs

24  reasonable, and promote effective decision making by the court, the parties, and counsel." (Cal.

25  Rules of Court, rule 3.400(a).)  All of the factors that the Court must consider under Rule

26  3.400(b) weigh strongly in favor of designating this case as complex.  Further, Defendants do not

27  oppose the complex designation.

28

                                2

This case arises from the ClubCorp Defendants' failure to refund or escheat membership deposits past due for return to members, which violates the California's Unclaimed Property Law (UPL), the Unfair Competition Law (UCL), and Defendants' own contracts. Further, Defendants have consistently filed unclaimed property reports with the State Controller's Office that omitted the deposits, they filed fraudulent reports in violation of the California False Claims Act (CFCA).

That Defendants' wrongful behavior directly affects more than 9,000 Californians and that the Complaint names more than 25 California clubs who have collectively retained a total of more than $10 million in membership deposits due for return in of itself merits a complex designation. The case is also complex because we expect the parties to file many motions involving disputed issues, and party and likely third party discovery will be voluminous. Furthermore, this matter should be designated complex because of overlapping legal and factual issues with a similar case filed by the California State Controller.

State Controller Betty Yee filed suit in this Court regarding ClubCorp's failure to escheat. *Yee v. ClubCorp*, Case No. CGC-19-576314. Both the Attorney General and Ms. Yee filed notices of a related case, and Ms. Yee has filed an unopposed application to designate her case as complex. These cases present overlapping allegations and questions of law, and will require discovery from the same sources.

The Attorney General now requests that the complex designation made on the Civil Case Cover Sheet filed along with the Complaint be approved because, as shown below, that would be in the best interests of the parties, the court system, and the general public.

## II. CASE BACKGROUND

Earlier this month, the Attorney General filed his Complaint for Treble Damages, Civil Penalties, Restitution, and Injunction for Violation of the Unfair Competition Law and California False Claims Act (the "Complaint") against ClubCorp (see Exhibit A). The Complaint alleges that over the course of many decades, more than 9,000 Californians entered into membership contracts and paid membership initiation deposits to over 25 ClubCorp clubs in California, and signed agreements with those clubs that their deposits would be returned in 30 years. However, instead of returning this money, Defendants' kept the money due to be returned to their very own

UNOPPOSED APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION

1   members and counted it as an asset.  (Complaint, ¶ 1.)  As of 2017, the sum of initiation deposits

2   ripe for repayment to Californians totals more than $10 million, and is growing every day.

3   (Complaint, ¶ 2.)   Defendants' withholding of these moneys violates the UPL, UCL and the

4   CFCA.  (Complaint, ¶ 6.).

### III.   THIS CASE SHOULD BE DESIGNATED AS COMPLEX

6         "A 'complex case' is an action that requires exceptional judicial management to avoid

7   placing unnecessary burdens on the court or the litigants and to expedite the case, keep costs

8   reasonable, and promote effective decision making by the court, the parties, and counsel."  (Cal.

9   Rules of Court, rule 3.400(a).)  This lawsuit—which involves several defendants, thousands of

10  Californians, and raises significant legal issue—meets this definition.

11        All of the factors listed in Rule 3.400(b) merit designating this matter complex.  The factors

12  a court considers in making this determination include:

13        (1)    Numerous pretrial motions raising difficult or novel legal issues that will be time-

14  consuming to resolve;

15        (2)    Management of a large number of witnesses or a substantial amount of documentary

16  evidence;

17        (3)    Management of a large number of separately represented parties;

18        (4)    Coordination with related actions pending in one or more courts in other counties,

19  states, or countries, or in a federal court; or

20        (5)    Substantial post-judgment judicial supervision.

21        (Cal. Rules of Court, rule 3.400(b).)

22        First, this case will involve extensive pretrial motion practice, including early dispositive

23  motions, likely discovery motions and summary judgment/adjudication motions.  (*Id.*, rule

24  3.400(b)(1).)  These motions may raise difficult issues of fact and law that will require

25  considerable judicial resources and time to resolve.  Additionally, many of the legal questions that

26  will need to be resolved in this case will also likely need to be resolved in *Yee v. ClubCorp*.

27  Designating these cases as complex will promote effective decision-making and efficient use of

28

1  judicial and party resources.  Thus, the first factor under Rule 3.4000(b) weighs in favor of

2  designating this case as complex.

3      Second, this case is likely to involve the management of a large number of witnesses and a

4  substantial amount of documentary evidence.  (*Id.*, rule 3.400(b)(2).)  The Attorney General's

5  action involves more than 9,000 contracts entered into more than thirty years ago at more than 25

6  separate California clubs.  It also involves financial records and databases that may be located in

7  other states.  Moreover, based on its investigation to date, the Attorney General's Office believes

8  that there are potentially hundreds of witnesses from ClubCorp or third parties, including current

9  or former club members, with relevant knowledge regarding ClubCorp's membership contracts

10  and practices regarding membership deposits.  Several ClubCorp executives with knowledge

11  regarding ClubCorp's membership deposit practices are located in Texas and/or other states.

12  Moreover, the Attorney General anticipates that multiple expert witnesses may be required,

13  adding to the number of witnesses and documents that will be involved in this lawsuit.  Thus, the

14  second factor under Rule 3.4000(b) weighs in favor of designating this case as complex.

15      Third, this case will potentially involve the management of a large number of separately

16  represented parties.  (*Id.*, 3.400(b)(3).)  Although Defendants are jointly represented in this action,

17  Defendants are represented by different counsel in the related *Yee* action.  Further, the factual and

18  legal issues raised in this action will likely require discovery from numerous third parties,

19  including club members, former clubs, and employees from former clubs.  Third party discovery

20  may result in bringing a number of additional parties (and their counsel) into the proceedings.

21  Thus, the third factor under Rule 3.4000(b) weighs in favor of designating this case as complex.

22      Fourth, this case should be coordinated with the related and pending *Yee v. ClubCorp* case.

23  That case involves the same defendants, is based in part on the same alleged practices and will

24  present some of the same questions of law and fact.  If not coordinated, litigating the two cases

25  separately will require substantial duplication of judicial resources. Both the present action and

26  the *Yee v. ClubCorp* were designated complex on their Civil Case Cover Sheets (Exhibits B & C)

27  and both are applying for complex designation.  Thus, the fourth factor under Rule 3.4000(b)

28  weighs in favor of designating this case as complex.

1   Fifth, substantial post judgment supervision may be required because the Attorney General

2   seeks injunctive relief.  (Cal. Rules of Court, rule 3.400(b)(2).)

3   **IV.   DEFENDANTS DO NOT OPPOSE THE COMPLEX DESIGNATION**

4   Defendants' counsel agrees that this case should be designated complex and does not

5   oppose this Application. (See Declaration of Courtney Towle in Support of Unopposed

6   Application for Approval of Complex Litigation Designation, ("Towle Decl."), filed concurrently

7   herewith, at ¶ 3.)  Under Rule 3.400(b), the court may consider other relevant factors in deciding

8   whether a case is complex.  Here, the fact that Defendants do not oppose this Application is yet

9   another factor weighing in favor of approving the complex designation.

10   **V.   CONCLUSION**

11   In summary, this action should be designated complex because it meets all of the factors for

12   complex designation under Rule 3.400(b).  Accordingly, this case "requires exceptional judicial

13   management to avoid placing unnecessary burdens on the court or the litigants," and such

14   management will "expedite the case, keep costs reasonable, and promote effective decision

15   making by the court, the parties, and counsel." (Cal. Rules of Court, rule 3.400.)  The Attorney

16   General therefore respectfully requests that the Court grant this unopposed application and

17   approve the designation of this matter as complex.

18   Dated:  June 24, 2019                         Respectfully Submitted,

19

20                                                 XAVIER BECERRA
                                                   Attorney General of California
21                                                 MARTIN GOYETTE
                                                   Senior Assistant Attorney General
22                                                 FREDERICK W. ACKER
                                                   Supervising Deputy Attorney General

23

24

25                                                 COURTNEY TOWLE
                                                   Deputy Attorney General
26                                                 *Attorneys for the People of the*
                                                   *State of California*

27

28

6

**DECLARATION OF COUNSEL**

I, Courtney Towle, declare and state as follows:

1.    I am a Deputy Attorney General, California Department of Justice, and I am one of the attorneys assigned to this matter.  Except as otherwise stated, I have first-hand knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2.    I make this declaration in support of the Attorney General's Unopposed Application for Approval of Complex Litigation Designation.

3.    On June 13, 2019, I spoke on the telephone with Defendants' counsel Mr. Thomas F. Carlucci, FOLEY & LARDNER LLP, 555 California Street, Suite 1700, San Francisco, CA 94104-1520.  During our telephone conversation, Mr. Carlucci agreed that this case should be designated complex and informed me that Defendants do not oppose this Application for Complex Litigation Designation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this was executed on this 24th day of June, 2019, at San Francisco, California.

_____

Courtney Towle

EXHIBIT   A

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 1 1 2019

CLERK OF THE COURT
BY: ROSSALY DE LA VEGA
Deputy Clerk

1   XAVIER BECERRA
    Attorney General of California
2   MARTIN GOYETTE (SBN 118344)
    Senior Assistant Attorney General
3   FREDERICK W. ACKER (SBN 208109)
    Supervising Deputy Attorney General
4   COURTNEY TOWLE (SBN 221698)
    JOANNA ROSEN FORSTER (SBN 244943)
5   Deputy Attorneys General
      455 Golden Gate Avenue, Suite 11000
6     San Francisco, CA  94102-7004
      Telephone: (415) 510-3537
7     Fax: (415) 703-5480
      E-mail: Courtney.Towle@doj.ca.gov
8
    *Attorneys for the People of the State of California*
9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SAN FRANCISCO

12

13                                         CGC-19-576620

14

15  PEOPLE OF THE STATE OF            Case No.
    CALIFORNIA
16                                    COMPLAINT FOR TREBLE DAMAGES,
                        Plaintiff,    CIVIL PENALTIES, RESTITUTION,
17                                    AND INJUNCTIVE RELIEF FOR
              v.                      VIOLATION OF THE UNFAIR
18                                    COMPETITION LAW AND
                                      CALIFORNIA FALSE CLAIMS ACT
    CLUBCORP HOLDINGS, INC.,
19  CLUBCORP CLUB OPERATIONS, INC.,
    CCA CLUB OPERATIONS HOLDING,
20  LLC, CLUBCORP USA, INC., CLUBCORP
    ALISO VIEJO HOLDING CORP.,
21  BERNARDO HEIGHTS COUNTRY CLUB,    DEMAND FOR JURY TRIAL
    CLUBCORP BRAEMAR COUNTRY
22  CLUB, INC., CLUBCORP CREST        Exempt from Filing Fees
    COUNTRY CLUB, INC., CLUBCORP
23  CENTER CLUB, INC., CLUBCORP COTO  (Gov. Code, § 6103)
    PROPERTY HOLDINGS, INC.,
24  CLUBCORP CROW CANYON
    MANAGEMENT CORP., CLUBCORP
25  DESERT FALLS COUNTRY CLUB, INC.,
    GRANITE BAY GOLF CLUB, INC., A/K/A
26  CLUBCORP GRANITE BAY
    MANAGEMENT, INC., CLUBCORP IW
27  GOLF CLUB, INC., CLUBCORP MISSION
    HILLS COUNTRY CLUB, INC.,
28  CLUBCORP PORTER VALLEY

                                1

1   COUNTRY CLUB, INC., SANTA ROSA
    GOLF & COUNTRY CLUB, CLUBCORP
2   SPRING VALLEY LAKE COUNTRY
    CLUB, INC., CLUBCORP TEAL BEND
3   GOLF CLUB, INC., CLUBCORP TURKEY
    CREEK GOLF CLUB, INC., CLUBCORP
4   SYMPHONY TOWERS CLUB, INC., CITY
    CLUB OF LOS ANGELES, INC., A/K/A
5   CLUBCORP BUNKER HILL CLUB, INC.,
    SILICON VALLEY CAPITAL CLUB
6   A/K/A CLUBCORP SAN JOSE CLUB,
    INC., MORGAN RUN CLUB & RESORT,
7   EMPIRE RANCH GOLF CLUB, INC., OLD
    RANCH COUNTRY CLUB, LLC,
8   SHADOWRIDGE GOLF CLUB, INC.,
    ROYAL DRIVE COUNTRY CLUB, INC.,
9   MCC MANAGEMENT CORPORATION,
    LAKEVIEW CITY CLUB, INC., SAN
10  FRANCISCO TENNIS CLUB, INC., LOS
    GATOS TENNIS CLUB, INC., MARINA
11  CLUB MANAGEMENT, INC.,
    CLUBCORP AIRWAYS GOLF CLUB,
12  INC., AND DOES 1-100,

13                          Defendants.

14

15

16  The People of the State of California, by and through Xavier Becerra, Attorney General of the

17  State of California, based on information and belief, allege as follows for their Complaint for

18  Violation of the Unfair Competition Law ("UCL") and California False Claims Act ("CFCA"):

19              INTRODUCTION AND GENERAL BACKGROUND

20      1.     This action arises from the practice of defendant country club owners and operators

21  of withholding money due for return to their members.  Over several decades, more than 9,000

22  Californians entered into membership contracts and paid membership initiation deposits with an

23  agreement that the deposits would be returned after 30 years.

24      2.     As of 2017, the sum of initiation deposits ripe for repayment to Californians totaled

25  more than $10 million.  Instead of returning this money, and contrary to the requirements of their

26  membership contracts, Defendants kept it and counted it as an asset.

27

28

                                          2

3.     California's Unclaimed Property Law (UPL) requires businesses to make efforts to return property to its rightful owners, and where those owners cannot be found, to escheat the property to the California State Controller's Office (SCO) to be held for the rightful owner. Though Defendants filed unclaimed property reports with the SCO, they intentionally omitted the initiation deposits due for return, and they did not escheat the deposits to the SCO.

4.     Defendants' falsification of the reports they filed with the SCO fraudulently reduced the amounts they owed to the state, thereby violating the CFCA.

5.     Defendants are fully aware of the requirements of California law and their own contracts, but refuse to either refund or escheat the past-due deposits.  This is in keeping with their founder's philosophy that "a dollar paid back is a dollar lost forever."

6.     It is time for Defendants to pay back what they owe.  Their actions violate the UPL, the UCL, and the CFCA.  They must return past-due deposits to their rightful owners.  If they cannot do so, they must escheat the deposits to the SCO.  They cannot simply keep the money.

## THE PARTIES

### I.     PLAINTIFF, THE PEOPLE OF THE STATE OF CALIFORNIA

7.     Attorney General Xavier Becerra is the chief law officer of the State of California ("State").  He brings this action on behalf of Plaintiff, the People of the State of California.

### II.     DEFENDANTS

8.     Defendant CLUBCORP HOLDINGS, INC. is a Delaware LLC with a principal place of business in Texas.  CLUBCORP HOLDINGS, INC. purports to be the largest owner and operator of private golf and country clubs in the country.  Through its various subsidiaries and affiliates, it owns or operates more than 200 clubs worldwide, including more than 20 subsidiary or affiliated clubs located in California, which are also parties to this action.  CLUBCORP HOLDINGS, INC. conducts business in California.

9.     Defendant CLUBCORP CLUB OPERATIONS, INC. is a Delaware LLC with a principal place of business in Texas.  CLUBCORP CLUB OPERATIONS, INC. conducts business in California, including operation of the more than 20 affiliated clubs located in California, which are also parties to this action.

3

1    10.    Defendant CCA CLUB OPERATIONS HOLDING, LLC is a Delaware LLC with a

2    principal place of business in Texas.  CCA CLUB OPERATIONS HOLDING, LLC conducts

3    business in California, including operation of the more than 20 affiliated clubs located in

4    California, which are also parties to this action.

5    11.    Defendant CLUBCORP USA, INC. is a Delaware LLC with a principal place of

6    business in Texas.  CLUBCORP USA, INC. conducts business in California, including operation

7    of the more than 20 affiliated clubs located in California, which are also parties to this action.

8    12.    Defendant CLUBCORP ALISO VIEJO HOLDING CORP. is an affiliate, subsidiary,

9    or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

10   CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

11   CLUBCORP USA, INC.  CLUBCORP ALISO VIEJO HOLDING CORP.'s principal place of

12   business is in Aliso Viejo, California.

13   13.    Defendant BERNARDO HEIGHTS COUNTRY CLUB is an affiliate, subsidiary, or

14   otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

15   CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

16   CLUBCORP USA, INC.  BERNARDO HEIGHTS COUNTRY CLUB's principal place of

17   business is in San Diego, California.

18   14.    Defendant CLUBCORP BRAEMAR COUNTRY CLUB, INC. is an affiliate,

19   subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

20   CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

21   LLC, and/or CLUBCORP USA, INC.  CLUBCORP BRAEMAR COUNTRY CLUB, INC.'s

22   principal place of business is in Tarzana, California.

23   15.    Defendant CLUBCORP CREST COUNTRY CLUB, INC. is an affiliate, subsidiary,

24   or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

25   CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

26   CLUBCORP USA, INC.  CLUBCORP CREST COUNTRY CLUB, INC.'s principal place of

27   business is in Riverside, California.

28

4

16.    Defendant CLUBCORP CENTER CLUB, INC., is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP CENTER CLUB, INC.'s principal place of business is in Costa Mesa, California.

17.    Defendant CLUBCORP COTO PROPERTY HOLDINGS, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or Clubcorp USA, Inc.  CLUBCORP COTO PROPERTY HOLDINGS, INC.'s principal place of business is in Coto de Caza, California.

18.    Defendant CLUBCORP CROW CANYON MANAGEMENT CORP. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP CROW CANYON MANAGEMENT CORP.'s principal place of business is in Danville, California.

19.    Defendant CLUBCORP DESERT FALLS COUNTRY CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP DESERT FALLS COUNTRY CLUB, INC.'s principal place of business is in Palm Desert, California.

20.    Defendant GRANITE BAY GOLF CLUB, INC. a/k/a CLUBCORP GRANITE BAY MANAGEMENT, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  GRANITE BAY GOLF CLUB, INC. a/k/a CLUBCORP GRANITE BAY MANAGEMENT, INC.'s principal place of business is in Granite Bay, California.

21.    Defendant CLUBCORP IW GOLF CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

1 | CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

2 | CLUBCORP USA, INC.  CLUBCORP IW GOLF CLUB, INC.'s principal place of business is in

3 | Indian Wells, California.

4 |     22.   Defendant CLUBCORP MISSION HILLS COUNTRY CLUB, INC. is an affiliate,

5 | subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

6 | CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

7 | LLC, and/or CLUBCORP USA, INC.  CLUBCORP MISSION HILLS COUNTRY CLUB,

8 | INC.'s principal place of business is in Rancho Mirage, California.

9 |     23.   Defendant CLUBCORP PORTER VALLEY COUNTRY CLUB, INC. is an affiliate,

10 | subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

11 | CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

12 | LLC, and/or CLUBCORP USA, INC.  CLUBCORP PORTER VALLEY COUNTRY CLUB,

13 | INC.'s principal place of business is in Northridge, California.

14 |     24.   Defendant SANTA ROSA GOLF & COUNTRY CLUB is an affiliate, subsidiary, or

15 | otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

16 | CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

17 | CLUBCORP USA, INC.  Defendant SANTA ROSA GOLF & COUNTRY CLUB's principal

18 | place of business is in Santa Rosa, California.

19 |     25.   Defendant CLUBCORP SPRING VALLEY LAKE COUNTRY CLUB, INC. is an

20 | affiliate, subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC.,

21 | and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS

22 | HOLDING, LLC, and/or CLUBCORP USA, INC.  CLUBCORP SPRING VALLEY LAKE

23 | COUNTRY CLUB, INC.'s principal place of business is in Victorville, California.

24 |     26.   Defendant CLUBCORP TEAL BEND GOLF CLUB, INC. is an affiliate, subsidiary,

25 | or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

26 | CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

27 | CLUBCORP USA, INC.  CLUBCORP TEAL BEND GOLF CLUB, INC.'s principal place of

28 | business is in Sacramento, California.

1        27.    Defendant CLUBCORP TURKEY CREEK GOLF CLUB, INC. is an affiliate,

2   subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

3   CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

4   LLC, and/or CLUBCORP USA, INC.  CLUBCORP TURKEY CREEK GOLF CLUB, INC.'s

5   principal place of business is in Lincoln, California.

6        28.    Defendant CLUBCORP SYMPHONY TOWERS CLUB, INC., is an affiliate,

7   subsidiary, or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or

8   CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING,

9   LLC, and/or CLUBCORP USA, INC.  Defendant CLUBCORP SYMPHONY TOWERS CLUB,

10   INC.'s principal place of business is in San Diego, California.

11        29.    On information and belief, defendant THE CITY CLUB OF LOS ANGELES, INC.

12   a/k/a CLUBCORP BUNKER HILL CLUB, INC. is an affiliate, subsidiary, or otherwise

13   associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB

14   OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP

15   USA, INC.  Defendant THE CITY CLUB OF LOS ANGELES, INC., a/k/a CLUBCORP

16   BUNKER HILL CLUB, INC.'s principal place of business is located in Los Angeles, California.

17        30.    Defendant SILICON VALLEY CAPITAL CLUB a/k/a CLUBCORP SAN JOSE

18   CLUB, INC. is an affiliate, subsidiary, or otherwise associated with defendants CLUBCORP

19   HOLDINGS, INC., and/or CLUBCORP CLUB OPERATIONS, INC., and/or CCA CLUB

20   OPERATIONS HOLDING, LLC, and/or CLUBCORP USA, INC.  SILICON VALLEY

21   CAPITAL CLUB a/k/a CLUBCORP SAN JOSE CLUB, INC.'s principal place of business is in

22   San Jose, California.

23        31.    Defendant MORGAN RUN CLUB & RESORT is an affiliate, subsidiary, or

24   otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

25   CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

26   CLUBCORP USA, INC.  MORGAN RUN CLUB & RESORT's principal place of business is in

27   Rancho Santa Fe, California.

28

1    32.    Defendant EMPIRE RANCH GOLF CLUB, LLC is an affiliate, subsidiary, or

2    otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

3    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

4    CLUBCORP USA, INC.  EMPIRE RANCH GOLF CLUB, LLC's principal place of business is

5    in Folsom, California.

6    33.    Defendant OLD RANCH COUNTRY CLUB, LLC is an affiliate, subsidiary, or

7    otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

8    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

9    CLUBCORP USA, INC.  OLD RANCH COUNTRY CLUB, LLC's principal place of business is

10    in Seal Beach, California.

11    34.    Defendant SHADOWRIDGE GOLF CLUB, INC. is an affiliate, subsidiary, or

12    otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

13    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

14    CLUBCORP USA, INC.  SHADOWRIDGE GOLF CLUB, INC.'s principal place of business is

15    in Vista, California.

16    35.    Defendant ROYAL DRIVE COUNTRY CLUB, INC. was an affiliate, subsidiary, or

17    otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

18    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

19    CLUBCORP USA, INC., until January 1981.  Defendant ROYAL DRIVE COUNTRY CLUB,

20    INC.'s principal place of business was in the State of California.

21    36.    Defendant MCC MANAGEMENT CORPORATION was an affiliate, subsidiary, or

22    otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

23    CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

24    CLUBCORP USA, INC., until January 1993.  MCC MANAGEMENT CORPORATION's

25    principal place of business was in the State of California.

26    37.    Defendant LAKEVIEW CITY CLUB, INC. was an affiliate, subsidiary, or otherwise

27    associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP CLUB

28    OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP

1  USA, INC., until December 1996.  Defendant LAKEVIEW CITY CLUB, INC.'s principal place

2  of business was in the State of California.

3      38.  Defendant SAN FRANCISCO TENNIS CLUB, INC. was an affiliate, subsidiary, or

4  otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or Clubcorp Club

5  Operations, Inc., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or CLUBCORP

6  USA, INC., until February 2009.  SAN FRANCISCO TENNIS CLUB, INC.'s principal place of

7  business was located at 645 5th St., San Francisco, in the State of California.

8      39.  Defendant LOS GATOS TENNIS CLUB, INC. was an affiliate, subsidiary, or

9  otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

10  CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

11  CLUBCORP USA, INC., until April 1997.  LOS GATOS TENNIS CLUB, INC.'s principal place

12  of business was in the State of California.

13      40.  Defendant MARINA CLUB MANAGEMENT, INC. was an affiliate, subsidiary, or

14  otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

15  CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

16  CLUBCORP USA, INC., until January 1988.  MARINA CLUB MANAGEMENT, INC.'s

17  principal place of business was in the State of California.

18      41.  Defendant CLUBCORP AIRWAYS GOLF CLUB, INC., is an affiliate, subsidiary,

19  or otherwise associated with defendants CLUBCORP HOLDINGS, INC., and/or CLUBCORP

20  CLUB OPERATIONS, INC., and/or CCA CLUB OPERATIONS HOLDING, LLC, and/or

21  CLUBCORP USA, INC., until September 2016.  CLUBCORP AIRWAYS GOLF CLUB, INC.'s

22  principal place of business was in Fresno, California.

23      42.  Collectively, the above-listed defendants are referred to as "ClubCorp" or

24  "Defendants."

25      43.  Defendants DOES 1 through 100, inclusive, are sued herein under fictitious names.

26  Their true names and capacities are unknown to the Plaintiff.  When their true names and

27  capacities are ascertained, Plaintiff will amend this complaint by inserting their true names and

28  capacities herein. Plaintiff is informed and believes and thereon alleges that each of the

1   fictitiously named defendants is responsible in some manner for the occurrences herein alleged

2   and that Plaintiff's damages and injuries as herein alleged were proximately caused by such

3   defendants.

4       44.    Each defendant named herein, including all fictitiously named defendants, is and at

5   all times mentioned was, the agent or employee of the remaining defendants, and in doing or

6   failing to do the things hereafter alleged, was acting in the course and scope of that agency or

7   employment with the full consent, either express or implied, of each of the remaining defendants.

8   **JURISDICTION**

9       45.    This Court has jurisdiction to hear the claims alleged in this Complaint and is a court

10   of competent jurisdiction to grant the relief requested.

11   **VENUE**

12       46.    At all relevant times alleged in this Complaint, Defendants did business in the City

13   and County of San Francisco.

14       47.    Violations of law alleged in this Complaint occurred in the City and County of

15   San Francisco.

16   **FACTUAL ALLEGATIONS**

17       48.    Founded in 1957, ClubCorp describes itself as "a membership-based leisure business

18   and a leading owner-operator of private golf and country clubs and business, sports and alumni

19   clubs in North America."

20       49.    Since ClubCorp was founded, new members have been expected to pay an initiation

21   deposit upon their acceptance. All membership agreements are—and have always been—drafted

22   by Defendants.  While the specific wording of the agreements varies somewhat, they all provide

23   that the deposit will be unconditionally refunded to the member after thirty years.  For example,

24   the agreement used by CLUBCORP PORTER VALLEY COUNTRY CLUB, INC. provides as

25   follows:

26           It is further agreed and understood that thirty (30) years from the date of payment of
      each installment of the initiation deposit the Club will unconditionally repay Applicant one

27           hundred percent (100%) of that installment of the initiation deposit made by Applicant to
      the Club.

28

10

1    The deposit amounts varied by club and by year from $300 to $7,500 or more.

2         50.    Despite this contractual repayment term, for decades ClubCorp has retained initiation

3    deposits long past the dates they come due for repayment. Keeping members' deposit money

4    instead of returning it as required by contract is ClubCorp's business practice not just in

5    California but nationwide.

6         51.    Over the sixty years of its existence, ClubCorp has collected over $717,100,000 in

7    initiation deposits. As of June 13, 2017, the total amount of initiation deposits currently due for

8    return to all of ClubCorp's current and former members had grown to $178,086,000.

9         52.    ClubCorp's records show that it retained initiation deposits due for refund to

10   Californians totaling more than $10 million. These initiation deposits are owed to approximately

11   9,000 California members and former members.

12        53.    Since its inception, ClubCorp has relied on membership initiation deposits to help

13   fund club development and acquisitions. As ClubCorp founder Robert H. Dedman, Sr., explained

14   in his autobiography, "To be a good entrepreneur, you have to know how to intelligently use what

15   we call OPM, 'Other People's Money. . . .' If we didn't sell memberships, we couldn't meet our

16   construction payments on the subsequent phases."

17        54.    In his autobiography, Mr. Dedman set forth what he called the "developer's creed":

18   "A dollar borrowed is a dollar earned. A dollar refinanced is a dollar saved. And a dollar paid

19   back is a dollar lost forever."

20        55.    Mr. Dedman also spelled out the "CEO's creed"—"Debt that does not become due

21   before I retire or sell my stock is equity."

22        56.    ClubCorp targets new member prospects who are around age forty.  Thus, when the

23   average 30-year deposit contract has run, members are in their seventies.  Given the considerable

24   length of time between signing the membership agreement and making the initiation deposit and

25   the date on which ClubCorp is obligated to return the deposit, many members likely forget that

26   their deposit is due for refund.  Further, members also may die before the deposit is due for

27   refund, and their executors and heirs likely will not know about the deposits.

28

57.     Defendants are holding property, monetary deposits, that indisputably belongs to others.

58.     Defendants have filed annual unclaimed property filings, called "holder reports," with the SCO.  The UPL requires businesses and other holders of unclaimed property to file reports with the SCO after a statutory period if the property cannot be returned to its rightful owner. These "holder reports" list all the unclaimed property in the holder's possession, which the holder then escheats to the State.

59.     Uniformly, Defendants' holder reports do not list the membership initiation deposits due for return.

60.     The UPL mandates that "all intangible property... that is held or owing in the ordinary course of the holder's business and has remained unclaimed by the owner for more than three years after it became payable or distributable escheats to this state."  CCP §1520(a).  That includes obligations to pay money.

61.     The membership deposits at issue are subject to escheat under the UPL.  ClubCorp's membership contracts uniformly required that members pay an initiation deposit, which ClubCorp must return after 30 years. Once that time runs, ClubCorp has a liquidated and certain obligation to repay the money.  If ClubCorp is unable to do so, it must escheat the money once the three-year dormancy period has expired.  CCP §1520(a).

62.     ClubCorp's failure to refund initiation deposits harms its members by depriving them of their money and any use to which they would put it.

63.     ClubCorp's failure to escheat initiation deposits for which the members could not be located has harmed the State of California by depriving it of the use of the funds that should have been escheated.

64.     ClubCorp's long-standing practice of retaining initiation deposits due for refund has benefitted ClubCorp by providing them an asset, millions of dollars, that they can put to business uses.  They have even described the deposits due for return as "non-interest bearing" loans or "forgivable loans."

65.     ClubCorp's practices violate California law.

12

## FIRST CAUSE OF ACTION
### Unfair Competition Law — Business and Professions Code § 17200, *et seq.*

66.   The People incorporate herein by reference the allegations in paragraphs 1 – 65 of this Complaint.

67.   Defendants have engaged in, and continue to engage in, unlawful, fraudulent, or unfair acts or practices in the conduct of a business, which acts or practices constitute unfair competition, as that term is defined in Business and Professions Code section 17200. Defendants' acts or practices include, but are not limited to, the following:

a.  Knowingly retaining membership initiation deposits due for return despite contract language requiring their return to members;

b.  Knowingly filing unclaimed property reports with the SCO that understate the amount of unclaimed property held by Defendants, thereby violating the UPL;

c.  Failing to return or escheat membership initiation deposits due for return; and

d.  Violating Government Code section 12651 et seq., as described in the Second Cause of Action, herein.

## SECOND CAUSE OF ACTION
### False Claims Act—Government Code § 12651, subd. (a)(7)

68.   The People incorporate herein by reference the allegations in paragraphs 1 – 67 of this Complaint.

69.   The terms "knowing" and "knowingly," as set forth in the CFCA, mean that a person, with respect to information, has actual knowledge of the information, acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information.  Proof of specific intent to defraud is not required.

70.   Defendants knowingly submitted, or caused to be submitted to the SCO unclaimed property holder reports that uniformly omit initiation deposits due for return.

71.   Initiation deposits that cannot be returned when due must escheat to the SCO per the UPL.

72.     Defendants filed false holder reports by knowingly omitting obligations to pay or transmit money to the state.

73.     Defendants violated the CFCA by knowingly filing false holder reports with the SCO.

74.     As a proximate result of Defendants' actions, the People suffered damages in a specific amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, the People of the State of California, pray for relief against all Defendants as follows:

1.     Pursuant to Business and Professions Code section 17203, that Defendants, and each of them, be ordered to pay restitution to all members whose deposits were held past their contractual return date and interest in an amount according to proof;

2.     Pursuant to Business and Professions Code section 17206, that Defendants, and each of them, be ordered to pay a civil penalty in the amount of $2,500 for each violation of Business and Professions Code section 17200, in an amount according to proof;

3.     Pursuant to Business and Professions Code section 17203, that Defendants, and each of them, be enjoined from engaging in violations of the California Unfair Competition Law, including without limitation the unfair, unlawful, and deceptive practices alleged herein;

4.     Pursuant to Government Code section 12651 subdivision (a), three times the damages that the People of the State of California have suffered as a result of Defendants' acts, in an amount to be determined, plus interest;

5.     Pursuant to Government Code section 12651, subdivision (a), the maximum allowable civil penalties for each false claim;

6.     All legal fees and costs incurred by Plaintiffs in bringing this action, including investigative costs, expert fees, attorney's fees, and litigation costs; and

7.     Such further or additional relief as the Court deems proper.

14

Dated: June 11, 2019

Respectfully Submitted,

XAVIER BECERRA
Attorney General of California
MARTIN GOYETTE
Senior Assistant Attorney General
FREDERICK W. ACKER
Supervising Deputy Attorney General

COURTNEY TOWLE
Deputy Attorney General
*Attorneys for the People of the State of California*

SA2012105383
21473281.docx

15

1

DEMAND FOR JURY TRIAL

2

Plaintiff respectfully demands a jury trial for the alleged claims.

3

4    Dated:  June 11, 2019

Respectfully Submitted,

5
XAVIER BECERRA
6    Attorney General of California
MARTIN GOYETTE
7    Senior Assistant Attorney General
FREDERICK W. ACKER
8    Supervising Deputy Attorney General

9

10

11    COURTNEY TOWLE
Deputy Attorney General
12    *Attorneys for the People of the State of
California*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

COMPLAINT FOR VIOLATION OF THE UCL AND CFCA

EXHIBIT   B

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
S. Michele Inan, SBN 119205
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Email: Michele.Inan@doj.ca.gov
TELEPHONE NO.: 415-510-3802   FAX NO.: 415-703-5480
ATTORNEY FOR *(Name):* Betty Yee, Plaintiff Controller of State of California

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

**CASE NAME:**
Betty Yee v. ClubCorp Holdings, Inc., et al.

FOR COURT USE ONLY
San Francisco County Superior Court
**FILED**
MAY 29 2019
CLERK OF THE COURT
BY: _____
Deputy Clerk

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder | |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT: CGC-19-576314 |

*Items 1–6 below must be completed (see instructions on page 2).*

BY FAX

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[✓] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[ ] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[ ] punitive
4. Number of causes of action *(specify):* Three
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 28, 2019

_____
(TYPE OR PRINT NAME)

▶ S. Michele Inan
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

EXHIBIT   C

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Courtney Towle, SBN 221698
455 Golden Gate Ave., Suite 11000
San Francisco, CA 94102
Email: courtney.towle@doj.ca.gov
TELEPHONE NO.: 415-510-3537   FAX NO.: 415-703-5480
ATTORNEY FOR *(Name):* People of the State of California

FOR COURT USE ONLY

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

JUN 1 1 2019

CLERK OF THE COURT
BY: ROSSALY DE LA VEGA
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102-4514
BRANCH NAME: Civic Center Courthouse

CASE NAME:
People of the State of California v. ClubCorp Holdings, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter   [ ] Joinder    Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: CGC - 19 - 576620 DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[✓] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Two
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 11, 2019
Courtney Towle, Deputy Attorney General
_____
(TYPE OR PRINT NAME)
► _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) (*if the*
    *case involves an uninsured*
    *motorist claim subject to*
    *arbitration, check this item*
    *instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability (*not asbestos or
    toxic/environmental*) (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      (*not medical or legal*)
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract (*not unlawful detainer
      or wrongful eviction*)
    Contract/Warranty Breach–Seller
      Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment (*non-
      domestic relations*)
    Sister State Judgment
    Administrative Agency Award
      (*not unpaid taxes*)
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
      harassment*)
    Mechanics Lien
    Other Commercial Complaint
      Case (*non-tort/non-complex*)
    Other Civil Complaint
      (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

CIVIL CASE COVER SHEET

## DECLARATION OF SERVICE BY U.S. MAIL

**Case Name:**   **People of the State of California v. ClubCorp Holdings, Inc., et al.**

**Case No.:**   **CGC-19-576620**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made.  I am 18 years of age or older and not a party to this matter; my business address is 455 Golden Gate Avenue, Suite 11000, San Francisco, CA  94102-7004.

On June 24, 2019, I served the attached **UNOPPOSED APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at San Francisco, California, addressed as follows:

Thomas F. Carlucci
555 California Street
Suite 1700
San Francisco, CA 94104-1520

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on June 24, 2019, at San Francisco, California.

| M Dubonnet | |
|---|---|
| Declarant | Signature |

SA2012105383
21509807.docx